16792

STATE v. KELLER

(78 S. E. (2d) 373)

*Mr. R. B. Hildebrand,* of York, *for Appellant,*

*Mr. Robert W. Hemphill, Solicitor,* of Chester, *for Respondent,*

November 4, 1953.

Baker, Chief Justice.

At the May (1952) term of the Court of General Sessions for York County, the appellant was tried and convicted, with recommendation to mercy, on an indictment returned by the York County Grand Jury charging him with the murder of Raymond W. Jackson, Jr., whom he shot and killed with a .32 caliber pistol on December 19, 1951.

Following appellant's conviction, formal motion for a new trial was made on substantially the same grounds as this appeal is bottomed, and marked "heard," with the understanding that it would be argued later, and he was sentenced to imprisonment for life. Thereafter, the motion was argued and refused, and this appeal followed.

The sole defense of the appellant was insanity; and his exceptions are:

"1. It was error to refuse Motion for New Trial on the ground that the Trial Court erred in not permitting the State's witness Terry Moffit to give his opinion as to the mental condition of the Defendant.

"2. The Circuit Judge erred in overruling the Defendant's second ground of a Motion for a New Trial in holding that the second ground did not recite error for the reason that counsel did not ask any of the other witnesses named any questions as to their opinion on the sanity or insanity of the Defendant Keller.

"3. The Court erred in finding and holding that the error, if any, was not prejudicial to the Defendant, and that the evidence not admitted was only cumulative in its nature."

Prior to entering upon a direct discussion of these exceptions, it should be stated that two well qualified psychiatrists, viz., Dr. Wilbur Merkley, a witness for the State, and Dr. John M. Pratt, a witness for the defend-

ant-appellant, both of whom had observed and examined the appellant for a sufficient length of time to form an opinion of his mental condition, and, having had the benefit of his history from former internments in various mental hospitals, testified that although the appellant was far from a normal person, he undoubtedly knew right from wrong. Dr. Pratt would not express an opinion as to whether appellant knew right from wrong at the time of the commission of the crime, but limited it to the time he had him under observation. Knowing right from wrong is the test in this State when a plea of not guilty by reason of insanity or mental irresponsibility is interposed as the defense to the commission of a crime. *State v. Anderson*, 181 S. C. 527, 188 S. E. 186.

The appellant was a frequenter of the place of business of the witness Terry Moffitt, who described this business as "Service station, beer and cafeteria," and was located about seven miles from Rock Hill on the highway leading to Lancaster. During the afternoon of the day of the killing, the appellant and the deceased had been drinking beer and whiskey in Moffitt's place of business, and though he described them as rather "high," he stated that neither was drunk. We now quote from the testimony of Mr. Moffitt:

"Q. On these various visits that he made down to your place, did you notice anything peculiar about Mr. Keller when he would come down there? A. Yes, sir, he has come down there several times. He worked out at Celanese, and he came down there and when he drank a beer or two, I don't know, he would just go all to pieces and get sleepy. I would tell him to go out and get in his car. I have pulled his car up to the back of the place, right to the back door and told him to get in it. I told him 'take you a nap, I'll wake you up.' There wouldn't be a soul out there, it would be the first of the week and nobody would be there but me and him. He would go out, stay there a couple of minutes and come in, claiming that something was after him.

"Q. He claimed that something was after him? A. Yes. I said 'ain't nobody bothering you, there's nobody here but you and I.' I said 'go lay down' and he would go lay down and say the same thing. He acted like something bothered him all the time. I have called Woodrow Snipes to come after him and take him home, to bring a driver to drive his car.

"Q. Would that be by reason of the fact that he seemed to be affected in some way? A. Yes, sir.

"Q. When he was there at your place when other people would be in the place, would he have anything to do with those people? A. He didn't say a word to nobody, only just stared at them.

"Q. He would just stand and stare? A. Yes, sir.

"Q. He wouldn't talk or have anything to do with anybody, if there was a customer in the place? A. No, sir.

"Q. Would he engage in conversation or talk to them? A. No, sir. He would speak to them if they spoke to him, and nine times out of ten ask them to have a beer, but he wouldn't say any more.

"Q. He wouldn't speak unless somebody spoke to him? A. Yes, sir.

"Q. In other words, he kept strictly to himself? A. That's right.

"Q. From your seeing him there in your place at frequent intervals, over the eight month period of time, would you say he was a normal person? A. No, sir:

"Q. Would you say that he was a person that was suffering from some sort of mental—

"Mr. Hemphill: Objection to that.

"Mr. Hildebrand: Your Honor—

"The Court: The man is no expert. He can tell what the man did, any abnormality the layman could observe, but as to the mental condition of somebody, let him testify to any facts.

"Mr. Hildebrand: Yes, sir.

"The Court: Any facts showing any abnormality, any abnormal actions or conditions, anything that he knows or observed, but as to testifying whether he was—what a man's mental condition is, I'll sustain the objection.

"Mr. Hildebrand: I might ask him this question: I might ask if he appeared to be a person of unsound mind to him.

"The Court: Can't the jury draw that conclusion from whatever abnormalities he testifies about as well as the witness?

"Mr. Hildebrand: Yes, sir.

"The Court: Let him testify to anything he did that was abnormal, anything that was not normal conduct.

"Mr. Hildebrand: I believe you testified at times you would call Mr. Woodrow Snipes to come out and get him?

"The Witness: Yes, sir.

"Mr. Hildebrand: That is all. Thank you."

From the foregoing testimony it will be seen that the witness had gone fully into the mental condition of the appellant, and when counsel for the appellant, addressing the Court, inquired if he might ask the witness (Moffitt) if the appellant appeared to be a person of unsound mind to him, the trial Judge replied, "Can't the jury draw that conclusion from whatever abnormalities he testifies about as well as the witness?"; counsel replied, "Yes, sir," and did not pursue the subject further.

While under the holdings of this Court in *State v. Stockman,* 82 S. C. 388, 64 S. E. 595, and *State v. King,* 222 S. C. 108, 71 S. E. (2d) 793, the witness Moffitt should have been permitted to express his opinion as to whether the appellant was of unsound mind, assuming that "unsound mind" was used in the sense of being the equivalent of "insane," yet reading the record as a whole, and in the light of the medical testimony, we are compelled to reach the conclusion that the error falls in the classification of "harmless error," which occurs very seldom, especially in a criminal case; and this we think counsel for the appellant

recognized when he agreed with the trial Judge that the jury could draw such conclusion from the abnormalities of the appellant testified to by the witness as well as the witness. The witness gave the jury a most graphic word picture of the appellant's mental state when he was partaking of alcoholic beverages, and generally, and we cannot conceive of a direct expression of opinion on the part of this witness adding any weight to his testimony concerning the issue.

If the appellant desired to have on appeal the advantage of a ruling by the trial Judge that several other lay witnesses would not have been permitted to give their opinion as to his sanity, such witness must of necessity have been asked questions thereabout. This could have been done without the slightest disrespect for the Judge's ruling in reference to the testimony of the prior witness, Terry Moffitt, and without prejudicing the appellant with the jury. All he had to do was to preface his question or questions by the statement that while the trial Judge had ruled such testimony by lay witnesses inadmissible, such question or questions were being asked for the record.

We find no merit in the exceptions and, therefore, the judgment and sentence appealed from is affirmed.

STUKES, TAYLOR and OXNER, JJ., concur.

FISHBURNE, J., not participating.