17835

STATE, Respondent, v. Douglas Clee THORNE, Appellant

(121 S. E. (2d) 623)

See also 237 S. C. 248, 116 S. E. (2d) 854.

*Messrs. James A. K. Roper* and *Harold N. Morris,* of Greenville, *for Appellant.*

*James R. Mann, Esq., Solicitor,* of Greenville, *for Respondent,*

September 18, 1961.

TAYLOR, Chief Justice.

Defendant was convicted of the crime of rape at the January, 1961, Term of General Sessions Court of Greenville County and sentenced to be executed as provided by law.

Defendant contends error, first, in admitting into evidence a photograph of himself, and, second, in permitting Dr. Lawson H. Bowling and Dr. Robert Crichton to state their opinions as to his sanity.

On Friday, March 13, 1959, Mrs. Helen Jackson, a resident of Laurens County and neighbor of the prosecutrix,

requested that she be permitted to accompany her and her mother to the Town of Piedmont, South Carolina, in Greenville County, where her mother wished to visit with a son. Upon learning that it was the prosecutrix' sixteenth birthday and her father had given her $5.00 to commemorate the occasion, it was decided that they would do some shopping in the City of Greenville. The three proceeded to Piedmont where Mrs. Jackson left her mother at the son's home. Leaving shortly thereafter, Mrs. Jackson and the prosecutrix continued to the City of Greenville where they parked in the parking lot near the Y. M. C. A. at approximately 7 P. M., from whence they proceeded to do some shopping. Later they bought something to eat and attended a picture show. At approximately 11 P. M., they left the picture show and returned to the parking lot. While approaching their car, the only one left in the lot at that time, another car, driven by defendant, entered at a fast rate of speed and stopped near Mrs. Jackson's car. As she placed the key in the switch of her car, defendant forced open the right front door, leaped into the car on top of the prosecutrix, held her with his left hand and attempted to stifle the screams of Mrs. Jackson by placing his right hand over her face. Suddenly the defendant jumped out of the car, caught the prosecutrix by her feet, pulled her out, picked her up and placed her in his car. Mrs. Jackson attempted to rescue the prosecutrix but was shoved back by defendant, who backed his car toward her in an apparent attempt to run her down. Before help could be secured by Mrs. Jackson the defendant drove from the parking lot with the prosecutrix seated on the front seat beside him, holding her head down near his knees with his right hand on the back of her neck, telling her to be still and quiet or he would snap her neck in two. He proceeded outside the city to a wooded area where the prosecutrix was raped twice and otherwise abused, the details of which are not of importance to the decision of this case. Later that night, he returned the prosecutrix to a point in the City of Greenville near the intersection of East North Street and No. 291 By-

pass from where she immediately telephoned police head-quarters which recorded the call as having been received at approximately 2 A. M. Complying with instructions, she remained in the telephone booth until picked up by the police shortly thereafter, as they had already been alerted as to what had happened in the parking lot. Being in a state of shock and largely incoherent, she was carried to the Green-ville General Hospital.

Upon trial, while defendant's sister, who had given testimony in behalf of defendant, was under cross examination, she was shown a photograph of defendant posing stripped to the waist, flexing his muscles, and was asked, "Does that look like your brother about three years ago? A. Yeah." Whereupon the picture was admitted in evidence over defendant's objection upon the grounds that it was calculated to inflame the jury, that the jury had the opportunity to view the defendant during the trial, and if being admitted for the purpose of showing the weight or height, that information was already before the jury.

The determination of the relevancy and the materiality of a photograph is left to the sound discretion of the trial Judge. If such photographs are calculated to arouse the sympathy or prejudice of the jury or if they are entirely irrelevant or not necessary to substantiate facts, they should be excluded, *State v. Edwards,* 194 S. C. 410, 10 S. E. (2d) 587; *State v. Jones,* 228 S. C. 484, 91 S. E. (2d) 1; *State v. Waitus,* 224 S. C. 12, 77 S. E. (2d) 256.

The trial from which this appeal comes was held approximately two years after the act complained of, and there is testimony that defendant had lost weight during this period of time. One of the elements of rape is the use of force, Sec. 16-71, Code of Laws of South Carolina, 1952; *State v. Brooks,* 235 S. C. 344, 111 S. E. (2d) 686; and it is not improper to show the circumstances under and through which the act was accomplished. The prosecutrix was a 16-year-old girl, weighing 95 pounds, while de-

fendant, in his early twenties, weighed in the neighborhood of 185 to 200 pounds. The photograph reveals he was a man well developed physically from the waist up. Defendant refers to the pose as being a "gorilla-like" pose, but it is not unusual for young men who take pride in their physical development to be photographed flexing their muscles, and we are not aware that such photos are inflammatory. While such photograph may in fact reveal a great difference in the size and apparent strength of the parties if it reflects the truth, it cannot of itself be said to be prejudicial. Defendant had been in prison since the time of his arrest approximately two years prior to this trial, a previous conviction having been reversed, State v. Thorne, 237 S. C. 248, 116 S. E. (2d) 854; and there was evidence of loss of weight during this time. The photograph is not questioned on the grounds that it does not correctly portray the defendant as he appeared at about the time the crime was committed but because the pose is a "gorilla-like" pose and inflammatory.

We see no merit in this contention.

By Order of the Honorable J. Robert Martin, resident Judge, dated May 9, 1959, defendant was committed to the South Carolina State Penitentiary for a period of 30 days, during which time the authorities of the South Carolina State Hospital were ordered to observe and examine the defendant and make a report of their findings to the Court of General Sessions of Greenville, Sec. 32-966, Code of Laws of South Carolina, 1952; Sec. 32-927, 1960 Code Supplement. Pursuant to this Order, defendant was committed and examined as ordered.

Dr. Lawson Bowling, Medical Director of the Columbia unit of the South Carolina State Hospital, testified that he is a graduate of the Medical College of South Carolina, with three years formal training in psychiatry, was certified as a psychiatrist by the American Board of Psychiatry and Neurology in 1955, since which time he has been Director of the State Hospital; that the defendant had been under the ob-

servation of a team of four physicians who, under his supervision and direction, had examined defendant on four different occasions prior to the final examination conducted by him on June 12 from 2:15 P. M. to 2:35 P. M., it being the practice for him, as Director, to conduct the final examination in company with the other members of the team.

Dr. Robert Crichton, a graduate of Emory University Medical School, Class of 1922, testified that he has been active as one of the psychiatrists at the State Hospital for the past four years; that he saw the defendant five times from May 15 through June 12; that he also conducted a physical examination and found him to be normal. Both physicians testified that as a result of their examinations defendant in their opinion was able to distinguish "right from wrong."

The test in this State is the mental capacity or the want of it sufficient to distinguish moral or legal right from moral or legal wrong and to recognize the particular act charged as morally or legally wrong; *State v. Jackson,* 87 S. C. 407, 69 S. E. 883; *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130; *State v. Gilstrap,* 205 S. C. 412, 32 S. E. (2d) 163; *State v. Keller,* 224 S. C. 257, 78 S. E. (2d) 373; *State v. Fuller,* 229 S. C. 439, 93 S. E. (2d) 463; *State v. Allen,* 231 S. C. 391, 98 S. E. (2d) 826.

There is testimony that the defendant was well developed physically for his age; that he had succeeded in getting into the Army when he was approximately 14 years of age, seeing combat in Korea at the approximate age of 15; that later he served in the Marines and, thereafter, in the Paratroops; that while at home on leave, he became involved in a brawl and was struck on the back of the head and thereafter suffered from moody spells, engaged in displays of temper and suffered from severe headaches; that he began drinking excessively to such an extent that his wife obtained a divorce in June, 1959, on the grounds of habitual drunkenness. His former wife testified that he had a soft voice and was kind to her when sober but when drunk he

would abuse her and himself and make statements about the horrors of war. Upon sobering up, he would refuse to discuss the matter and refused to go to a doctor for an examination, but there is no testimony that defendant was insane or mentally defective to the extent that he did not know right from wrong. On the contrary, there is testimony by two doctors who gave as their unqualified opinion that defendant was free of any mental disease and knew right from wrong. The jury was at liberty to consider this testimony in the light of the circumstances under which such opinions had been arrived at and give it such weight as it deemed proper under the circumstances.

The foregoing disposes of all questions raised by defendant; nevertheless, in keeping with our rule of *in favorem vitae*, we have carefully searched the record for errors which might affect defendant's substantial rights even though not made a ground of appeal and find none. The judgment and sentence of the trial court must therefore be affirmed; and it is so ordered.

Affirmed.

OXNER, LEGGE, MOSS and LEWIS, JJ., concur.