18881

The STATE, Respondent, v. Ronald Jerome REDDING, Appellant

(166 S. E. (2d) 219)

314

*Walter Bilbro, Jr., Esq.,* of Charleston, *for Appellant,*

*Messrs. Arthur G. Howe, Solicitor, and Robert B. Wallace and A. Arthur Rosenblum, Assistant Solicitors,* of Charleston, *for Respondent,*

February 25, 1969.

CLARENCE E. SINGLETARY, Acting Associate Justice.

Defendant was convicted after trial by jury of Assault with Intent to Ravish, with a recommendation to the mercy of the court. He was sentenced to serve twenty years. This appeal followed.

We agree with counsel for the State that Defendant's exceptions present four questions for our consideration. We must review the testimony in some detail before considering these questions.

The testimony indicates that shortly after 5:00 o'clock in the afternoon of January 16, 1967, an eighteen year old Negro girl was criminally assaulted near a railroad track in an unpopulated area behind Tri-State Discount Store in the North Area of Charleston County. She worked at the store as a cosmetic saleslady and was taking a short cut across a field behind the store on her way home when a young man passed her riding a bicycle. He came back toward her with a knife in his hand, held it to her throat and demanded money. He grabbed her pocketbook and checked her wallet, but did not find any money and threw it back towards her. The young man then grabbed her arm and with the knife in her side, forced her into a nearby bushy area. He then attempted to have sexual intercourse with her. During the ensuing struggle, which she estimated lasted fifty minutes, she was choked, bruised and scratched.

After the struggle the assailant again took her purse, removed a black wallet and told her he was going to keep it, and if she called the police that "they had better catch him or he would burn her house down and kill her." He then ran. After she arranged her clothes, the victim proceeded back towards the store, and on the way met one Clifford Anderson, whom she knew. She told Anderson what had happened to her, and received certain information from Anderson which she later related to the investigating officer.

The victim and Anderson proceeded to her home where she reported the incident to her father who called the police. County patrolman Jesse Williams answered the call and was given a description of the assailant as being five feet seven or eight inches tall, weighing about one hundred forty-five pounds; that he had on a black suit coat, plaid flower shirt and dark grey pants. The victim also gave the officer the name of "Redding" as the last name of her assailant. She had received this name from Clifford Anderson. Officer Williams carried the victim to the scene of the assault, and then to the county police headquarters.

The officer knew a Redding family and proceeded to the area where they lived, approximately seven blocks from the store.

At about 8:15 p, m., as officer Williams approached the Redding home, he saw a young man, wearing a black coat, who met the description of the assailant, in height and weight. The officer recognized him as being a member of the Redding family. Upon being questioned, the young man identified himself as the defendant, Ronald Redding, and he was placed under arrest.

Prior to placing the defendant in a detention cell at the police station, under the policy of the Charleston County police department, officer Williams testified he searched Redding and found two wallets, one black and one red. At that time, according to officer Williams, Redding exclaimed, "This one (pointing to the black wallet) is not mine! I found it on the school bus." The black wallet, and the investigation, were then turned over to the detectives of the police department.

Shortly thereafter, on the same night, the defendant was placed in a lineup with three other colored youths of the same general description. The victim identified the defendant as her assailant.

At the trial, the victim again identified the assailant and also identified the black wallet as being her wallet. Upon

looking through the wallet on the witness stand, she stated that everything in it was hers, except a photograph, which was then marked for identification.

A preliminary hearing was held on January 17, 1967, at which time Hans F. Paul, Esq., a practicing attorney in Charleston County, was present at the request of the defendant's mother. The attorney talked to the defendant and also asked some questions of Detective Gethers, who was present at the hearing. The defendant was bound over under a $25,000.00 bond. Eighteen days after defendant's arrest, on February 3, 1967, he told the county jailor he thought Mr. Paul was his lawyer. Had he informed the jailor he did not have an attorney, according to the testimony, the jailor would have notified the court, and an attorney would have been appointed to represent him.

The defendant was indicted at the March term of the General Sessions Court of Charleston County. On March 6, 1967, the defendant was brought before the Honorable James A. Spruill, Jr., Presiding Judge, at which time attorney Paul advised the Court that he did not represent the defendant. Walter Bilbro, Jr., Esq., and Charles J. Baker, Jr., Esq., were appointed to represent the defendant.

On March 10, 1967, appointed counsel appeared with the defendant and moved to quash the indictment on the grounds that counsel had not been timely appointed. The motion was denied by the presiding judge who asked whether the defendant wanted another preliminary hearing or a continuance. Neither was requested. The case was called for trial on March 14, 1967, and the defendant announced that he was ready for trial.

> Our first question for consideration is whether defendant was prejudiced in having counsel appointed under the circumstances of this case.

Defendant argues that he was denied the opportunity to have an attorney refresh the memories of witnesses soon

after the event, so that their testimony would be more credible, and that he was denied an opportunity to obtain additional alibi witnesses, including playmates. He argues that the elapse of time before appointment of counsel prejudiced the effectiveness of the legal assistance which was ultimately furnished the defendant.

The defense was based on alibi. Testifying on behalf of the defendant was himself, his nephew, his mother, his sister-in-law, and a girl friend. These witnesses testified they saw the defendant at certain times during the day, which if believed, would have made out the alibi defense. The nephew testified as to the type of clothing the defendant was wearing, as did his girl friend, Annie Mae Mazyck. It is apparent from the testimony of the defense witnesses that their recollection did not need refreshing. They were specific as to details. It is also apparent from the finding of the jury, who are ultimate triers of facts, that the testimony of the defendant and his witnesses was not believed.

As conceded by the defendant in his brief, there is no requirement that counsel must be provided at a preliminary hearing in South Carolina, since this has been determined to be not a critical stage. *State v. White,* 243 S. C. 238, 133 S. E. (2d) 320 (1963). While there was counsel of his mother's choosing present at the preliminary hearing, the fact that counsel later refused to represent the defendant can have no bearing on the question here involved. The jury, at the trial of the case, had no knowledge of the events transpiring at the preliminary hearing. It also may be reasonably inferred that appointed counsel were given the benefit of any information obtained by Mr. Paul.

Upon motion to quash the indictment on the grounds that counsel was not timely appointed, the defendant was offered the opportunity for another preliminary hearing or for a continuance. He did not take advantage of this offer. Further, it appears from the testimony that an attorney would have been appointed for him by the court some eighteen

days after his arrest except for his mistaken belief that his mother had secured an attorney to represent him.

When it was brought to the attention of the Court in the March term, that the defendant had no counsel, counsel were promptly appointed.

The question raised here was considered by the Supreme Court of Ohio in *State v. Childs,* 14 Ohio St. (2d) 56, 236 N. E. (2d) 545 (1968). The defendant there was arrested on December 23, 1963, in connection with two armed robberies. He was indicted by the grand jury on February 27, 1964, and upon arraignment on March 6, 1964, advised the court that he was indigent and wanted counsel. Counsel was appointed on April 22, 121 days after arrest. The defense at trial was based upon alibi. He was convicted, and on appeal, claim was made that the inordinate length of time between arrest and the appointment of counsel denied the defendant the right to a fair trial. The Court held:

"The claimed legal deprivation underlying appellant's largely factual argument seems to be the denial of counsel at a critical stage of the proceedings.

"This argument may be divided into parts. In the first part, the defendant argues that there was a possible, but unprovable, prejudice inherent in the delay in contacting his alibi witnesses, caused by the delay in appointing counsel. He then asserts that the possibility of prejudice is enough to require reversal, and for the support of this assertion he relies upon *Chapman v. Calif.,* 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. (2d) 705, which holds that a constitutional error in criminal cases must be harmless beyond a reasonable doubt in order to be considered harmless. The reliance is misplaced. The Chapman rule applies to the test of harmlessness when there is a constitutional error, and has no application in deciding whether such an error exists. * * *

"There is a basic difference, however, between the need for a lawyer in this case and the need for a lawyer in the 'critical stage' cases, such as *Hamilton v. State of Alabama,*

368 U. S. 52, 82 S. Ct. 157, 7 L. Ed. (2d) 114; *White v. State of Maryland,* 373 U. S. 59, 83 S. Ct. 1050, 10 L. Ed. (2d) 193, and *United States v. Wade,* 385 U. S. 811, 87 S. Ct. 81, 17 L. Ed. (2d) 53. In those cases, an attorney was needed for legal services, as the 'stage' was some point in the prosecution where important legal decisions were necessary or where a confrontation of legal significance occurred, *i. e.,* pleas had to be made or defenses were lost, *(Hamilton v. State of Alabama),* or pleas made would be available in evidence later, *(White v. State of Maryland),* or firm identification judgment would be made without being subject to the truth testing of cross-examination. *(United States v. Wade).*

"Here, on the other hand, the claimed need for an attorney was primarily for contacting the alibi witnesses soon after the events in order to direct their attention toward those events in order to remember them. In such a case counsel would be performing only a notification function, and not a legal advice-giving or truth-seeking function that only a lawyer can perform. In most cases, including this one, such notification would not require legal expertise.

"This claim presents a new question that has not been authoritatively decided heretofore. If we are to hold that the defendant was denied counsel at a critical stage of the proceedings against him we must do so on the facts of this case, as there is no authority to do so on the basis of *stare decisis.*

"After a careful consideration of the facts, we do not think the requested extension of the constitutional right to counsel is warranted.

"In the first place, the alibi witnesses of the defendant were not strangers who would not be expected to have any idea of the importance of remembering the events of December 17 and 19 until contacted by appellant's attorney four months later. Instead, his five witnesses were his mother and step-father, both of whom lived in the same house with

him, and three friends, two of whom lived in the same house and one other who was arrested at about the same time and apparently for one of the same offenses for which defendant was indicted. All that these friends and relatives needed to know were the dates that the defendant supposedly robbed the markets and their memories would immediately have been directed to when they saw him on those days. It would be unreasonable to assume, without any proof whatsoever, that for four months after Joe Willie Childs was arrested, these particular people, as close as they were to the defendant, had no idea of the offenses for which he was arrested. * * *

"The reality of the situation in this case, and in criminal cases generally, is that the state is not as a practical matter able to provide counsel to all indigent defendants at all stages of the proceedings where there is a mere possibility that absence of counsel 'might derogate the accused's right to a fair trial.' In the absence of circumstances demonstrated in the record which are persuasive that 'potential substantial prejudice to the accused's rights' occurred, we will not deem it to be constitutional error that counsel was not provided for the purpose of interrogating and notifying alibi witnesses on behalf of the accused promptly after his arrest."

Counsel also argues strenuously that under the Fourteenth Amendment, this defendant was denied "equal protection" since he did not have the same opportunity to secure counsel as did a man of means. We can find no authority based on *stare decisis* to support such a claimed constitutional right.

The second question before us is whether there was probable cause for the arrest of the defendant without an arrest warrant.

Counsel argues that the victim's wallet, which was taken from the defendant prior to his being placed in the detention cell, was illegally seized since there was no probable cause for the arrest. Officer Williams, the first policeman to answer the victim's complaint, received a description from the

victim of the assailant as a young man, five feet seven or eight inches tall, weighing one hundred forty-seven pounds, wearing a black coat. There is no doubt the physical description received from the victim was reliable. She had ample opportunity to view her assailant during the encounter. She also gave the officer the possible name of her assailant, obtained from Anderson whom she encountered shortly after the attack. The officer had reasonable grounds to believe a felony had been committed.

With the above information in hand, officer Williams proceeded toward the Redding home. When he arrived in the vicinity of the Redding home, he saw the defendant walking across a school yard, wearing a black coat. The defendant fit the description given by the victim. When an officer has reason to believe that a felony has been committed, and that a person is the party who committed the crime, an arrest is proper without a warrant. *State v. Thomas,* 248 S. C. 573, 151 S. E. (2d) 855 (1966).

The next question raised by the defendant is whether a statement by the defendant about a wallet found on him after his arrest is admissible. We find no error in the admission of the statement.

Prior to placing the defendant in the detention cell at the County police station, officer Williams searched him. Upon finding two wallets, according to officer Williams, the defendant spontaneously exclaimed, while pointing to the victim's wallet, "That is not mine! I found it on the school bus." At this point in the chain of arrest, the defendant while in custody, according to the officer, was not being interrogated. No attempt had been made, or was then being made, to obtain a statement or admission from the defendant. While counsel objected to the arrest of the defendant, and moved to suppress evidence obtained as a result of the arrest, there was no specific objection made to officer Williams' testimony of the statement made by defendant. We deal with this question only because appointed counsel may have

been under the impression the motion to suppress covered this question. The trial court was not required to rule on the admissibility of this statement. The defendant, on the stand, gave a different version of what he said to the officer. We have here a question of the credibility of witnesses for consideration by the jury.

In any event, *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, 10 A. L. R. (3rd) 974, does not proscribe the admission of the spontaneous, free and voluntary exclamation of a defendant. The court specifically held in *Miranda:*

"Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime or a person who calls the police to offer a confession or any other statement he desires to make. Voluntary statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today * * * the privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner * * *."

The final question for consideration is whether a photograph introduced in evidence was prejudicial.

The photograph in question became important during the trial when the victim, upon the stand, looked through her wallet and found the photograph. The wallet had not been in her possession since it was taken from her by the assailant. The photograph depicts the defendant, his mother, sister-in-law, and sister, sitting around a table with a bottle of whiskey and other articles thereon. The defendant voluntarily took the stand, and admitted it was his photograph, and that he placed it in the victim's wallet.

The determination of the relevancy and the materiality of a photograph is left to the sound discretion of the trial judge. *State v. Thorne,* 239 S. C. 164, 121 S. E. (2d) 623 (1961). Except for the peculiar circumstances surrounding its being placed in the victim's wallet, the photograph would have been irrelevant. It is not gory; it does not depict violence; it does not show a crime. There was no abuse of discretion by the trial judge in admitting the photograph under the facts of this case.

The judgment and sentence of the trial court are affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.