19493

The STATE, Respondent, v. Pierce CAMPBELL, Appellant

(191 S. E. (2d) 770)

*Messrs. Theodore W. Law, Jr.* and *Henry W. Kirkland,* of Columbia, *for Appellant,*

*John W. Foard, Jr., Esq., Solicitor,* of Columbia *for Respondent.*

October 2, 1972.

LITTLEJOHN, Justice:

We are called upon in this appeal to evaluate the trial judge's treatment of evidentiary matters and to determine whether the evidence created jury issues. The defendant Pierce Campbell was charged with murder and convicted of the voluntary manslaughter of Annie Ruth Gleaton. He has appealed.

On three separate occasions during the trial the defendant moved for a mistrial; the court denied each motion. The first motion asserted that highly prejudical inadmissible evidence, an axe, was shown to the jury. The second motion claimed highly prejudicial photographs, which had no probative value, were admitted into evidence and inflamed the jury. The third motion for mistrial was grounded on the assertion that a shirt ruled inadmissible in the State's case in chief was brought to the attention of the jury on the State's cross examination of the defendant.

At the conclusion of the State's evidence and again at the conclusion of all evidence the defendant moved for a directed verdict of acquittal because of insufficiency of the State's proof, and after rendition of the verdict moved for judgment *non obstante verdicto,* or in the alternative for a new trial

These motions were also denied and it is from all these rulings that defendant appeals.

The defendant submits five exceptions. We will consider each separately.

The first exception raised by the defendant is as follows:

"(1) The Court erred in refusing to direct a verdict at the conclusion of the State's case in favor of the Defendant since the evidence taken in the most favorable light to the State will not support a conviction for manslaughter."

A review of the evidence is necessary:

Campbell and the deceased, whom he refers to as his "girl friend", occupied a small house on Pulaski Street in Columbia. Witness Clarence Ruff testified that he visited with them in their house about 9:30 the night of Annie Ruth

Gleaton's death. The house was cleaned up and the visit was routine.

Witness Henry Palmer testified that his house was about twenty feet from the defendant's house. He and Campbell had lived there for several years and he was acquainted with the deceased woman. He testified that sometime after midnight he heard the deceased hollering: "Please Pierce Campbell, please don't hit me no more. Please. Please." Witness Jacob Norris, who lived nearby, testified that the defendant Campbell came to his house about 3:30 in the morning and asked him to call an ambulance. Officer Richard Good testified that he went to defendant's house and found Gleaton on the floor. She was dead. There was an axe in the room identified as belonging to the defendant; it was wet with water. The room was in complete disarray; it was described: "There was blood all over the bed and all over where the stove had been turned around where they evidently had scuffled."

The doctor described the death-causing injury as follows: "There were multiple laceration wounds of the scalp eight to ten inches long and down into and through the brain substance." . . . "The wound went down into the skull and into the brain and produced hemorrhages and destruction of brain tissue."

The defendant denied that he killed Gleaton, but the jury obviously, and understandably, did not believe him.

Chief Justice Moss, writing for the Court in *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464 (1970) stated our rule:

"In deciding whether the court erred in not directing a verdict in favor of the appellant, we must view the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evideince merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is

evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced."

Viewing the evidence in the light most favorable to the State, we conclude that jury issues were created. We find no error in the refusal of the judge to direct a verdict, or to set the verdict aside after it had been rendered by the jury.

The second exception:

"(2) The Court erred in failing to grant a mistrial on motion of Defendant because prosecution had displayed an axe before the jury and questioned witnesses in regards to the same when it is apparent that the prosecution knew that the axe could not be connected with the crime."

The solicitor on two occasions offered in evidence the axe which was found at the scene in a wet condition. The judge ruled it inadmissable because the state failed to connect it with the crime. He told the jury to disregard it and instructed the clerk to place it out of the jury's sight. We are of the opinion that the handling of this matter did not entitle the defendant to a mistrial. In actuality, if the judge had, in his discretion, admitted the axe in evidence we would not reverse. It was the type of instrument which could have caused the injury described by the doctor. The defendant was probably not entitled to a ruling so favorable as that given by the judge. In *United States v. Lombardozzi*, 335 F. (2d) 414 (2d Cir. 1964), cert. denied, 379 U. S. 914, 85 S. Ct. 261, 13 L. Ed. (2d) 185 (1964) the Court allowed into evidence a gun which was introduced to show how a serious skull fracture could have been caused. There was no error in refusing a mistrial because of the solicitor's offer to make the axe an exhibit.

The third exception:

"(3) The Court erred in admitting into evidence certain pictures when they could serve no purpose but to inflame the jury when they had not been identified by the photographer

who took them, the photographer not being present and therefore not subject to cross-examination."

The photographs offered in evidence were identified by a police officer who saw the scene depicted and who testified that they were correct representations of the area they portrayed. Argument that the photographer himself should have been present for cross-examination under the facts of this case is without merit. Normally it is sufficient to justify admittance of photographs into evidence if a person familiar with the scene can say that the pictures truly represent the scene involved. Concededly, there may be instances in which the judge should require the photographer to be present for examination and cross-examination, but nothing in the record before us justified such action on the part of the judge. Even as one who saw the scene is permitted from memory to describe it verbally, he is usually permitted to describe it using a photograph which he can identify. The photographs served the purpose of helping the jury visualize the scene involved. They were not objectionable or inflammatory as contemplated by our rule.

This Court in *State v. Thorne,* 239 S. C. 164, 121 S. E. (2d) 623 (1961) stated:

"The determination of the relevancy and the materiality of a photograph is left to the sound discretion of the trial judge. If such photographs are calculated to arouse the sympathy or prejudice of the jury or if they are entirely irrelevant or not necessary to substantiate facts, they should be excluded."

We find no error in the exercise of the judge's discretion in admitting the photographs.

The fourth exception:

"(4) The Court erred in failing to grant a mistrial when the State willfully produced and offered into evidence a shirt which tended to impeach the credibility of the Defendant and which the Court had ruled to be inadmissable because procured by an invalid search warrant."

In the State's case in chief, the shirt was offered into evidence in the absence of the jury but was not allowed. Later it was shown to the defendant on cross-examination in an effort to impeach him. The defendant made an objection, which was sustained by the trial judge. He then instructed the jury to totally disregard the shirt.

When the record shows that objectionable evidence ██ was either disallowed or stricken out on motion and the jury instructed to disregard it, the defendant cannot complain. *State v. Bass,* 242 S. C. 193, 130 S. E. (2d) 481 (1963). Since the objection was sustained and the jury instructed to disregard the shirt, this exception is without merit.

The fifth exception:

"(5) The Court erred in failing to grant a verdict *non obstante veredicto* or, in the alternative, a new trial because of the jury, having been repeatedly subjected to the display of inflammatory and inadmissible evidence, could not possibly have reached a reasoned verdict."

This exception in effect repeats the objections stated █ in the first four exceptions discussed heretofore. For the reasons recited above, this exception is overruled.

The defendant has failed to convince this Court that he did not receive a fair trial, and the judgment of the lower court is

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.