281 S.C. 508 (1984)
316 S.E.2d 395
The STATE, Respondent,
v.
Willie STROMAN, Appellant.
22109
Supreme Court of South Carolina.
Heard February 8, 1984.
Decided May 21, 1984.
*509 *510 Jan S. Strifling, and S.C. Office of Appellate Defense, Columbia, for appellant.
Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr., and Solicitor James C. Anders, Columbia, for respondent.
Heard February 8, 1984.
Decided May 21, 1984.
NESS, Justice:
Appellant, Willie Stroman, was convicted of four counts of murder, five counts of kidnapping, and one count each of safecracking, assault and battery with intent to kill, armed robbery, conspiracy to commit armed robbery, and contempt of court. He was sentenced to life imprisonment for the murder, kidnapping, and safecracking convictions, twenty years for assault, twenty-five years for armed robbery, five years for conspiracy, and six months for contempt, all to run consecutively. We affirm the convictions, but vacate the life sentences for kidnapping.
Appellant first contends the trial court erred in allowing Dr. Burke Dial, the attending physician for State's witness Frankie Mae Harkless, to testify at trial. We disagree.
During cross-examination of Mrs. Harkless, appellant's counsel attempted to discredit her direct testimony by showing that Mrs. Harkless had suffered from lapses of memory resulting from a head wound she received during the commission of the crime of which appellant was charged. The State then called Dr. Dial, who testified as to the extent of Mrs. Harkless's injury, and its effect on her capacity to remember and communicate her past experiences.
"Corroborative testimony is testimony which tends to strengthen, conform, or make more certain the testimony of another witness." State v. Rogers, 299 N.C. 597, 264 S.E. (2d) 89, 92 (1980); State v. Royal, 300 N.C. 515, 268 S.E. (2d) 517 (1980). "Evidence is admissible to corroborate the testimony of a previous witness, and whether it in fact corroborates the witness' testimony is a question for the jury." State v. Bridwell, 56 N.C. App. 572, 289 S.E. (2d) 842, 845 (1982), see also, State v. McDaniel, 68 S.C. 304, 309, 47 S.E. 384 (1904); Burns v. Clayton, 237 S.C. 316, 117 S.E. (2d) 300 (1960).
*511 Through Dr. Dial's testimony, the State merely attempted to corroborate Mrs. Harkless's testimony and rebut the inference relating to her inability to remember, which appellant's counsel raised on cross-examination. We hold the trial court properly allowed Dr. Dial to testify, as appellant's counsel "opened the door" to this testimony through its cross-examination of Mrs. Harkless.
Appellant also claims the trial judge erroneously expressed an opinion as to appellant's guilt in directing State's witness Felder to leave the witness stand and determine whether he could identify appellant Stroman as the bearded assailant who took part in the Harkless slayings. We disagree.
Within a few days after the murders, Felder had a police artist construct a composite drawing of one of his assailants. This drawing strongly resembled appellant Stroman. Felder also viewed a lineup consisting of six pictures, but was unable to make a positive identification. At trial, Felder was questioned concerning the identities of the men who confronted him at the Harkless home on the day of the shootings. During the questioning he stated repeatedly that one of the assailants, a dark skinned black man, approximately forty years of age, wore a blue suit and had a full short beard and mustache, specked with gray hair. This testimony essentially matched his prior descriptions.
On recross-examination, Felder became somewhat confused by appellant's counsel's questioning, which focused on the fact that Felder had previously identified co-appellant Livingston as the man who first confronted him with a gun. At the conclusion of recross-examination the trial judge directed Felder to go down in the courtroom and see if he could identify appellant Stroman. After looking at Stroman, Felder stated, "I think he's probably the one."
"[A] trial judge may not, expressly or by implication, intimate any opinion as to the force and effect of testimony in the case." State v. Dawkins, 268 S.C. 110, 111, 232 S.E. (2d) 228, 229 (1977); see also, State v. Robinson, 274 S.C. 198, 262 S.E. (2d) 729 (1980). He "may properly question witnesses in order to clarify and to promote a proper understanding of the testimony." State v. Rinck, 303 N.C. 551, 280 S.E. (2d) 912, 921 (1981); accord, State V. Chasteen, 228 S.C. 88, 88 S.E. (2d) 880 (1955).
*512 Felder was subjected to extensive questioning by three attorneys as to his prior identifications of appellant Stroman and co-appellant Livingston. Appellant's counsel emphasized Felder's failure to identify appellant's photo during a lineup, while the State focused on Felder's construction of a composite which strongly resembled appellant. The end result of Felder's testimony was to create a great deal of confusion regarding his ability to identify appellant. In directing Felder to "go down there and look at him," the trial judge attempted to clarify Felder's testimony. We find no merit in appellant's claim that the trial judge injected his opinion and assumed a prosecutorial role by eliciting this information from Felder.
Appellant next argued the trial court erred in permitting the introduction into evidence of photographs of the victims. We disagree.
"The determination of the relevancy and the materiality of a photograph is left to the sound discretion of the trial Judge." State v. Thorne, 239 S.C. 164, 167, 121 S.E. (2d) 623, 624 (1961). "Normally it is sufficient to justify admittance of photographs into evidence if a person familiar with the scene can say that the pictures truly represent the scene involved." State v. Campbell, 259 S.C. 339, 344, 191 S.E. (2d) 770, 773 (1972). We hold the photographs were properly admitted to corroborate State's witnesses Harkless's and Felder's accounts of the circumstances of the crimes, especially in light of appellant's counsel's continued efforts to cast doubt on their ability to recall, with any degree of certainty, the details surrounding the shootings.
Appellant next contends the trial court erred in permitting the jury to view a videotape interview with State's witness McDowell, claiming the tape contained objectionable questions and comments. The film consisted of McDowell's walking through the crime scene with police, while discussing the sequence of events which occurred on the day of the shooting. We hold the trial court acted properly as the tape provides no basis for appellant's contention of error.
Appellant next maintains the trial court erred in allowing the State to elicit testimony which indicated appellant had committed two prior armed robberies.
At trial, Frank McDowell, an accomplice in the shootings who had pled guilty and agreed to testify for the State, was *513 asked on cross-examination whether he had ever broken into other homes for money. McDowell stated that he had. On redirect examination, the State attempted to question McDowell about these housebreakings, specifically two in which appellant participated. Apparently, none of the participants had been convicted of these crimes.
Appellant objected to any inquiry into the facts of the prior crimes, claiming appellant's counsel's question merely "opened the door" for further questioning involving McDowell's rather than appellant's involvement in the housebreakings. The trial judge ruled the "door had been opened" to inquiry into appellant's participation in "any crime that included a breaking into a building" or "armed robbery or some stealing of money."
The State proceeded to question McDowell about crimes he had committed for money. McDowell then described two 1979 robberies in which appellant was an accomplice.
"Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though [the] latter evidence would be incompetent or irrelevant had it been offered initially." State v. Albert, 277 S.E. (2d) 439, 441 (N.C. 1981); State v. Miller, 61 N C. App. 1, 300 S.E. (2d) 431 (1983). See also U.S. v. Allain, 671 F. (2d) 248 (7th Cir.1982); U.S. v. Barrentine, 591 F. (2d) 1069 (5th Cir.), cert. den., 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed. (2d) 419 (1979). Additionally, a party "cannot complain of an error which his own conduct has induced." State v. Worthy, 239 S.C. 449, 465, 123 S.E. (2d) 835 (1962).
Once appellant's initiated the questioning concerning McDowell's prior acts of theft, the State was free to question him as to the details of any prior crime involving the stealing of money. The scope of redirect rests in the discretion of the trial court. State v. Tyner, 273 S.C. 646, 258 S.E. (2d) 559 (1979). We hold the trial court property admitted McDowell's testimony.
Appellant next asserts the trial court erred in failing to grant a mistrial based on two statements made by the solicitor during final arguments of the guilt phase of trial.
First, appellant argues the solicitor improperly commented on appellant's silence in violation of the Fifth Amendment. We disagree.
*514 During trial, the State had introduced evidence identifying a fingerprint found at the crime scene as that of appellant. In his closing argument, the solicitor alluded to the fact that appellant had not attempted to contradict this evidence. "The control of argument is normally within the discretion of the trial judge, and we will not disturb his ruling where there is no abuse of discretion." State v. Penland, 275 S.C. 537, 539, 273 S.E. (2d) 765, 766 (1981). We find no abuse.
Appellant also claims the solicitor's mention of 10 Charles Manson in his closing argument warranted a mistrial. We disagree.
While making his closing argument, the solicitor stated: "...[a]nd they are going to tell you that they are both cloaked in innocence. As a matter of fact, its a part of the charge that His Honor will give you that they are cloaked in innocence and only you can remove it. Well I want you to know that the cloak has been worn by many people and its been ripped from them by many juries. Charles Manson wore that same..."
At this point appellant's counsel objected and moved for a mistrial. The trial court denied this motion, instructed the jury to disregard the mention of Manson, and directed the solicitor to "get off the subject."
"When the record shows that objectionable evidence was either disallowed or stricken out on motion and the jury instructed to disregard it, the [appellant] cannot complain." State v. Campbell, supra, 191 S.E. (2d) at 773; State v. Lynn, 277 S.C. 222, 284 S.E. (2d) 786 (1981). We hold the trial court properly cured the solicitor's error.
Finally, appellant claims the trial court erred in sentencing him to life imprisonment for his kidnapping convictions. The State concedes these sentences violated our ruling in State v. Copeland, 278 S.C. 572, 300 S.E. (2d) 63 (1982), where we held that S.C. Code Ann. § 16-3-910 (1976 as amended) prevents the imposition of a life imprisonment sentence for kidnapping if the defendant has also been sentenced for murder pursuant to S.C. Code Ann. § 16-3-20 (1976 as amended). We agree with appellant and vacate the life sentences for kidnapping.
Affirmed as Modified.
LEWIS, C.J., and LITTLEJOHN, GREGORY and HARWELL, JJ., concur.