20100

The STATE, Respondent, v. Richard VALENTI, Appellant
(218 S. E. (2d) 726)

*Messrs. Coming B. Gibbs, Jr., and Mark C. Tanenbaum,* of Charleston, *for Appellant,* cite:

Messrs. *Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Asst. Atty. Gen.,* of Columbia, and *Robert B. Wallace, Sol.,* and *Arthur Rosenblum, Asst. Sol.,* of Charleston, for Respondent, cite:

October 6, 1975.

LITTLEJOHN, Justice:

Richard R. Valenti, appellant, was tried before the Honorable Clarence E. Singletary on charges of murdering two teenaged girls. The jury found him guilty on both counts. He was sentenced to two life imprisonments—the two sentences to run consecutively.

Appellant now asks this Court for a new trial, alleging that the trial court erred in five particulars:

1. in refusing to grant motions for a change of venue and a continuance;

2. in refusing to sustain challenges for cause against ten jurors;

3. in admitting into evidence the confessions and admissions of appellant;

4. in charging the M'Naghten Rule relating to insanity instead of charging the test adopted by the American Law Institute; and

5. in refusing to declare a mistrial, or in the alternative, to charge the jury the law governing the disposition of a person found insane, after the solicitor, in his closing argument, said that appellant would be set free if he were found insane.

A review of the facts is necessary to an understanding of the issues. Appellant was arrested at his home on a charge of assault with intent to ravish, unconnected with this case. He was given the *Miranda* warnings and did not ask to have counsel present. En route to the police station, he expressed a willingness to discuss his desire to bind and gag females.

At the station house, appellant said that he wanted to make a statement. His statement and interrogation were recorded on a tape, with his permission. During the interrogation, appellant confessed to the abduction and strangulation of the two girls, for which he has now been convicted. He stated that he had taken the two girls to an abandoned beach house, had bound and gagged them, and had tied a noose around their necks. The noose was tied to water pipes in a shower stall.

Appellant stated that the girls, by struggling to free themselves, caused the chair on which they were standing to fall, and that the girls died by strangulation. Appellant watched the girls until they died and then buried them in nearby sand dunes.

After his interrogation, appellant agreed to take the police officers to the grave site. While the bodies were being exhumed, appellant took the authorities to the shower stall in which he had hung the girls. Pieces of rope were still hanging from the water pipes.

The remains of the two bodies were found in the grave site pointed out by appellant. The remains were little more than skeletons, making immediate identification difficult. Personal effects (a necklace, a ring and a pair of earrings) later identified as belonging to the girls were found in the grave.

Ten days prior to trial, appellant moved for a change of venue, or in the alternative for a continuance, on the ground that there had been extensive pretrial publicity prejudicial to a fair trial. After hearing oral arguments and reviewing the publicized materials, Judge Singletary denied the motion. Appellant argues that the denial of this motion was prejudicial to his trial.

In *State v. Swilling,* 249 S. C. 541, 155 S. E. (2d) 607, this Court held that the moving party has the burden of showing that prospective jurors have been prejudiced by

pretrial publicity. Further, we have held that the decision of the trial judge will not be disturbed absent a showing of abuse of discretion. *State v. Lytchfield,* 230 S. C. 405, 95 S. E. (2d) 857 (1957); *State v. Fuller,* 227 S. C. 138, 87 S. E. (2d) 287 (1955).

A review of the record fails to reveal that the trial judge abused his discretion. All of the news media witnesses testified that their coverage was factual in nature, and the one editorial published merely extended sympathy to the families of the victims. Additionally, the *voir dire* examination (discussed in detail in the next issue) revealed that all prospective jurors, with the exception of one who was excused by the court, said that they could give appellant a fair and impartial trial.

Our holding in the recent case of *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379, cert. denied, 409 U. S. 1077, 93 S. Ct. 691, 34 L. Ed. (2d) 666 (1972), is equally applicable here. In *Crowe,* the factual setting was almost identical. We said in part:

"The trial judge conducted a careful *voir dire* examination of the jurors to determine the existence of any bias, prejudice, or adverse influence from newspaper publicity and prior discussions of the case in the community. The jurors selected to try the case stated under oath that they were not biased or prejudiced and could give the defendant a fair and impartial trial. It was apparent from the examination of the jurors that the claimed prejudice from newspaper publicity and discussions of the case in the community was not established."

The second issue raised by appellant is that the trial judge ered in refusing to excuse for cause ten jurors, who stated that they had concluded from the news media that the two girls had died as a result of unlawful means. Appellant argues that since the State had the burden of proving that the two girls were in fact dead and that

the girls had in fact died by unlawful means, it was prejudicial to seat jurors who had already formed an opinion adverse to appellant relating to these questions.

A review of the record reveals, to the exclusion of all other reasonable inferences, that the two bodies of the girls exhumed from the grave pointed out by the appellant were those of the two girls with whose wrongful death the appellant was charged. It further reveals, beyond debate, that they died by strangulation. Accordingly, the information which the jurors had attained from the news media concerned uncontradicted facts. The real issue in the case was not whether these girls were dead; and not whether they had been wrongfully killed. The question was whether the appellant was the person who did the deed and whether he was insane at the time. It can hardly be logically argued that the fact that some jurors had information relative to facts not really in dispute, denied the accused a fair trial.

As noted above, the trial judge conducted a thorough *voir dire* examination. Although several jurors indicated that they had formed an opinion that the two girls had died by unlawful means, each stated that he could give appellant a fair and impartial trial. In *State v. Fuller, supra,* we held that although a juror may have formed an opinion, he could properly serve if (1) he were free of any bias or prejudice; (2) he could give the accused a fair and impartial trial; and (3) he would be uninfluenced by any opinion previously formed. The trial judge is allowed a broad discretion in dealing with matters of this type.

Appellant thirdly argues that the trial judge erred in admitting into evidence his confession and admissions. During the trial the solicitor offered into evidence a tape recording and a written statement containing the confession and admissions of the appellant. Both the tape and the statement apparently contained references to other crimes, but only those portions which referred to the killing of the two victims involved in this case were pre-

sented to the court. Before ruling on the confession and admissions, the trial judge held an extensive hearing out of the presence of the jury. There was presented to the judge (1) testimony of the police officers, (2) the contents of the tape and the statement, and (3) the testimony of the appellant.

The testimony of the officers, which appeared credible, would clearly indicate that the appellant was given *Miranda* warnings on several occasions; that he understood his rights, waived the same, and gave statements freely and voluntarily. The appellant signed the written statement and admitted that the voice on the tape sounded like his own.

The appellant's own testimony, given in opposition to the admission of the confession and admissions, may be characterized as "I don't remember specifically" testimony. He denied little, but averred that he well remembered being promised psychiatric care if he would give a statement.

The details of the rather full hearing on the admissibility of the confession and admissions need not be recited. Suffice it to say, the same have been reviewed by this Court and found to be without merit. It is not unusual for evidence to be in conflict relative to the voluntariness of a confession. When this is true, the trial judge must make the determination. The determination which he made in this case is abundantly supported by the record, and we find no error.

Pursuant to § 10 of Rule VIII of this Court, counsel sought and was granted permission to attack our ruling in *State v. Cannon,* 260 S. C. 537, 197 S. E. (2d) 678 (1973), wherein we adhered to the M'Naghten Rule where insanity was pled as a defense. In argument, counsel asked this Court to review, modify and/or overrule cases which adhere to the M'Naghten Rule, applied by this Court in cases wherein insanity had been pled as a defense. They would have us adopt the American Law Institute definition of insanity. After considering argu-

ment of counsel, we conclude that the rule should not be modified or overuled. Accordingly, we adhere to the test traditionally applied in this State, to-wit, the M'Naghten Rule.

At appropriate stages of the trial, counsel for the appellant requested the judge to charge the jury §§ 32-969 and 32-970 of the South Carolina Code (now repealed). These sections provided that the trial judge may order a person who has been charged with a criminal offense and adjudged mentally ill, or regarding whom there is question as to the relation of mental illness to the alleged crime, to the State Hospital for treatment.

The judge refused the request because, under his view, what becomes of an accused person after conviction or acquittal is of no concern to the jury. We find no error in the refusal to charge.

During the solicitor's final argument to the jury, defense counsel interrupted him to object to his argument relative to the disposition of the defendant in case he was found not guilty by reason of insanity. Counsel moved the judge "either for an instruction by the court or a mistrial." Obviously, a mistrial was not required. The judge adequately and skillfully gave a curative charge. At the end of the curative charge and before the solicitor continued his argument, no further objection on the part of defense counsel was indicated. At the end of the judge's final charge of all the law on the entire case, counsel was again given an opportunity to object to charges already made, and/or to request additional charges. Apparently counsel was satisfied with the curative charge which had been given; no further request, relative to the improper argument, was made. A review of the entire record convinces this Court that the trial judge handled this matter properly, and no grounds for a new trial have been shown.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and NESS, JJ., concur.