21040

The STATE, Respondent, v. Rudolph TYNER, Appellant.

(258 S. E. (2d) 559)

*Richard N. Booth,* and *Eldridge R. Inman,* Conway, *for Appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Brian P. Gibbes* and *Kay G. Crowe,* Columbia, *Sol. Harry G. Charles,* Conway and *Sol. Donald V. Myers* and *Asst. Sol. Cameron Littlejohn,* Lexington, *for Respondent.*

August 23, 1979.

NESS, Justice:

On March 18, 1978, Mr. and Mrs. William B. Moon were shot and killed during the armed robbery of their convenience store near Myrtle Beach. Appellant and Carlton Davis were arrested at the Davis home, approximately one mile from the store, in the early morning hours of March 19th. A shotgun linked to the murders was seized. Tyner subsequently gave police a statement admitting the crimes.

Appellant raises numerous exceptions to his conviction, all of which we have concluded are without merit.

(1) Appellant asserts the trial judge erred in failing to grant his motion for a change of venue. He contends the pretrial publicity of the crime and the local sentiment surrounding the incident precluded the holding of a fair trial in Horry County. We disagree.

> Motions for change of venue are addressed to the sound discretion of the trial judge, and his decision will not be reversed absent an abuse of discretion.

*State v. Valenti,* 265 S. C. 380, 218 S. E. (2d) 726 (1975) ; *State v. Neeley,* 271 S. C. 33, 244 S. E. (2d) 522 (1978). Moreover, the burden is on the moving party to show that prospective jurors have been influenced by pretrial publicity. *State v. Fowler,* 266 S. C. 203, 222 S. E. (2d) 497 (1976) ; *State v. Swilling* 249 S. C. 541, 155 S. E. (2d) 607 (1967).

We conclude the evidence was insufficient to establish that pretrial publicity foreclosed appellant's opportunity for a fair trial. Only one of the witnesses testified that in his opinion, appellant would not receive a fair trial in Horry County. The newspaper articles submitted were four months old, and none contained inflammatory or prejudicial matter.

The trial court acted properly in denying appellant's motion for a change in venue.

(2) Appellant argues the trial court erred in denying his motion to sequester all the State's witnesses. He asserts that hearing the testimony of other witnesses afforded an opportunity for comparison in influence.

A motion to sequester rests in the sound discretion of the trial judge. *State v. Jackson,* 265 S. C. 278, 217 S. E. (2d) 794 (1975) ; *State v. Hall,* 268 S. C. 524, 235 S. E. (2d) 112 (1977). When questioned by the trial judge, appellant was unable to explain how failure to sequester the witnesses would prejudice him. We conclude the trial court's decision was proper.

(3) Appellant argues the trial court erred in excusing Willie V. Stover, a member of the jury venire, from service on the basis of his opposition to capital punishment.

The following colloquy occurred between the defense attorney, the court, and Mr. Stover:

"Q. Mr. Stover, are you for or against the death penalty in South Carolina?

"A. Do I have to answer that?

"THE COURT: Yes, sir. Just answer yes or no, are you for it or against it?

"A. I'm against it." (Tr. p. 408).

"THE COURT: Are there any circumstances under the law for which you would vote for the death penalty?

"A. I would say yes." (Tr. p. 409).

Upon cross-examination, the following discussion took place between the solicitor and Mr. Stover:

"Q. If evidence was presented to you in this case of aggravation and aggravating circumstances, would you vote to give the defendant the death penalty?

"A. Say that to me again.

"Q. After all the evidence in the case where the state presents its testimony from witnesses on that stand and where the defense presents testimony from witnesses from that stand and that evidence justified the death penalty, based on that evidence could you vote to give the defendant the death penalty?

"A. No." (Tr. p. 410).

We conclude this questioning process, when viewed in its entirety, demonstrates the prospective juror's unwillingness to vote for the death penalty under any circumstances, regardless of the facts proved. The process was consistent with the standards established in *Witherspoon v. Illinois,* 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968), and its progeny. Therefore, it was not error for the trial court to excuse the prospective juror for cause. Moreover, in light of our reversal of appellant's death sentence, this exception is moot.

(4) Appellant contends it was error for the trial court to permit the prosecution to examine certain jurors after appellant exhausted his peremptory strikes and waived *voir dire.* We disagree.

The method and scope of *voir dire* is within the trial court's discretion. *State v. Dawkins,* 268 S. C. 110,

232 S. E. (2d) 228 (1977). The record does not reveal that appellant objected to the continuation of *voir dire* after waiving it, or that appellant was prejudiced thereby. Accordingly, this argument is without merit.

(5) Appellant asserts the trial court erred in permitting a forensic pathologist to give his opinion concerning the distance of the shotgun blast and the absence of powder burns on the clothing of Mr. Moon. Appellant concedes a forensic pathologist may testify about cause of death, angle of wounds, entry and exit of bullets, and the like, but contends that only a ballistics expert can testify about distance and lack of powder burns. Regarding the prejudicial effect of the testimony appellant states at page 12 of his brief: "The effect upon the jury of this testimony during deliberation can only be surmised and is pure conjecture at this point." We hold the trial court acted within its discretion in allowing the tesimtony. See 23 C. J. S. Criminal Law, § 868, pp. 426-431; Moenssens, Moses and Inbau, Scientific Evidence in Criminal Cases, p. 181 (1976); *State v. Watkins*, 259 S. C. 185, 191 S. E. (2d) 135 (1972).

(6) Appellant asserts the court erred in allowing Exhibits 1, 2, 3 and 4 into evidence. The disputed exhibits were:

(1) wadding removed from the body of Mr. Moon;

(2) pellets removed from the body of Mr. Moon;

(3) wadding removed from the body of Mrs. Moon;

(4) pellets removed from the body of Mrs. Moon.

A trial has wide discretion in the admissibility of evidence. *State v. Quillien*, 263 S. C. 87, 207 S. E. (2d) 814 (1974); *State v. Pruitt*, 260 S. C. 396, 196 S. E. (2d) 107 (1973). The challenged exhibits were properly identified and relevant; therefore they were correctly admitted into evidence.

(7) Appellant next argues the trial court erred in allowing the State, over defense objection, to pose a leading question, and thereafter, in refusing to allow the defense, upon cross-

examination, to inquire into the witness' justification for her feelings about the appellant.

Appellant objected to the following question by the solicitor as leading: "Q. Did you ever have any difficulty communicating with Mr. Tyner or he with you?" (Tr. p. 545). The trial judge overruled the objection and held the question was not leading.

A leading question is one which suggests to the witness the desired answer. *State v. Cook,* 204 S. C. 295, 28 S. E. (2d) 842 (1944) ; Wigmore, Evidence, Vol. III, § 769, p. 122 (1940). As the question propounded by the solicitor was not suggestive of an answer, it was not leading. Moreover, a trial court has broad discretion in the scope of questions permissible. *State v. Outen,* 237 S. C. 514, 118 S. E. (2d) 175 (1961) ; *State v. Davis,* 267 S. C. 283, 227 S. E. (2d) 662 (1976). In order to require reversal, appellant must show an abuse of discretion resulting in prejudice. *Smith v. Union-Buffalo Mills Company,* 100 S. C. 115, 84 S. E. 422 (1914) ; *State v. Davis,* 239 S. C. 280, 122 S. E. (2d) 633 (1961). Neither has been shown here.

Appellant also argues the trial court erred in restricting his cross-examination of the witness, Jan Cimo, daughter-in-law of the Moons. Appellant complains he was precluded from questioning Ms. Cimo as to her possible bias or prejudice against him when the trial judge refused to allow a response to the following question: "You sure you aren't saying that now just to justify your reason for saying something about him . . ." (Tr. p. 567).

As appellant's counsel's question was argumentative and was preceded by numerous questions in the same vein, the trial court did not abuse its discretion in refusing to permit the question. See *State v. Weaver,* 265 S. C. 130, 217 S. E. (2d) 31 (1975).

(8) Appellant asserts the trial court erred in allowing into evidence the check of appellant, cashed at the Moon store one day before the crime.

Again, the trial court has wide discretion in the admission of evidence. *State v. Pruitt, supra; State v. Anderson*, 253 S. C. 168, 169 S. E. (2d) 706 (1969). The fact that Tyner had made purchases at the Moon store was relevant and not prejudicial; moreover, the evidence was cumulative to other evidence indicating appellant was familiar with the store. There was no error in allowing the check into evidence.

(9) Appellant excepts to the trial court allowing the solicitor to inquire on redirect about (a) the room in the Davis residence where appellant slept; (b) the general layout of the Davis house; (c) who shared the room with appellant; and (d) the location where the shotgun was found.

The extent of redirect is subject to the trial court's discretion *State v. Barrs*, 257 S. C. 193, 184 S. E. (2d) 708 (1971); cert. den. 406 U. S. 907, 92 S. Ct. 1615, 31 L. Ed. (2d) 818; McCormick, Evidence, (2d) Ed. § 32, p. 64 (1972). Further, appellant has failed to show how this latitude in redirect was prejudicial. This has no merit.

(10) Appellant contends the trial court erred in sustaining the solicitor's objection to portions of the cross-examination of witnesses Hunt and Causey, Horry County police officers. Hunt was not present when Tyner confessed, yet appellant's counsel asked the following questions on cross-examination:

"Q. Did you ever know Mr. Tyner before that particular evening?

"A. No, sir.

"Q. Do you know whether or not he had ever received any psychological testing or examination?" (Tr. p. 698).

At that point, the State objected on the basis that counsel was assuming facts not in evidence. The trial court sustained the objection.

Not only does the trial judge have broad discretion in setting the scope of cross-examination, but the question was

not relevant where Hunt's only contact with appellant was to drive him from the Davis residence to the Moon Store. The trial judge did not err in sustaining the objection.

Again during the cross-examination of Officer Causey, appellant's counsel sought to ask questions regarding the witness' knowledge of appellant's medical history. The following occurred:

"Q. Did you have any knowledge about whether he had ever been in any hospitals?

"A. No, sir.

"Q. If he had, would this have made any difference to you?" (Tr. p. 962).

At that point, the solicitor objected and the trial court agreed there was no evidence in the record of any hospitalization whatsoever. We believe the trial court acted within its discretion in disallowing the question.

(11) Appellant next excepts to the admission into evidence of the shotgun shells. He asserts the shells were altered and a proper chain of custody was not established. This is without merit.

The markings on the shells were made for the forensic purpose of later identification. Moreover, the chain of custody was established as far as practicable. See *State v. Kahan,* 268 S. C. 240, 233 S. E. (2d) 293 (1977).

(12) Appellant asserts the trial court erred in admitting into evidence a tape recording of his confession, the transcription of the recording and the signed copy of the *Miranda* warnings.

While appellant asserts the State failed to lay an adequate foundation for the admissibility of the tape, the record reveals a sufficient foundation was laid. Detective Causey testified that after appellant made an oral confession, he procured a dictaphone recorder and taped the statement. Causey identified the cassette and stated it had been in police custody

since it was recorded. His secretary testified she went to the Department in the early morning hours of March 19th, and typed a cassette handed to her by Causey.

As the admission of a tape recording of a confession was approved in *State v. Valenti,* 265, S. C. 380, 218 S. E. (2d) 726 (1975), and a proper foundation was laid, here, the trial court acted within its discretion in admitting the recording.

Appellant further contends the court erred in ruling that the confession was voluntarily and intelligently made. The only reason advanced by appellant for this position is that appellant has a below normal I.Q. Mental deficiency alone is not a basis for rendering a confession involuntary. *In Re Williams,* 265 S. C. 295, 719 (1975); Annotation, 69 ALR (2d) 348. There was ample evidence that appellant was given his *Miranda* warnings and indicated he understood his rights. This exception is without merit.

(13) Appellant argues the trial court erred in sustaining the solicitor's objection to appellant's examination of Dr. Camp, a psychiatrist who testified for the State. Appellant attempted to elicit testimony from Dr. Camp regarding a brain scan performed on appellant in New York twelve years earlier. We concur with the trial court's conclusion that the results of the test were too remote in time to be relevant as the issue was appellant's mental capacity on the night of the murders and this was adequately established by psychiatric testimony.

(14) Appellant contends the trial court erred in failing to grant a mistrial after the solicitor played a portion of appellant's taped confession during his closing argument. We do not believe a mistrial was warranted. As the jury was permitted to carry the tape to the jury room and had already heard the tape during the course of the trial, it is difficulty to discern how appellant was so irreparably prejudiced as to justify a mistrial. *State v. Lee,* 269 S. C. 421, 426, 237 S. E. (2d) 768 (1977).

The question of whether an argument is improper is addressed to the discretion of the trial judge. *State v. Peterson,* 255 S. C. 579, 180 S. E. (2d) 341 (1971); *State v. Durden,* 264 S. C. 86, 212 S. E. (2d) 587 (1975). We conclude the trial court properly handled the issue.

(15) Appellant asserts the trial court erred in refusing to grant his motions for a directed verdict and judgment N.O.V. We disagree.

The rule is that unless there is a failure of competent evidence tending to prove the charge in the indictment, the trial court should deny such motions. *State v. Foxworth,* 269 S. C. 496, 238 S. E. (2d) 172 (1977); *State v. Irvin,* 270 S. C. 539, 243 S. E. (2d) 195 (1978). Ample evidence existed here to warrant submission of the case to the jury.

(16) Appellant claims it was error to allow the State to examine a copy of the typewritten report of Dr. Stanton, which formed the basis for his in-court testimony. This has no merit. Where a document is used by a witness to refresh his recollection, the adverse party has a right to have the memorandum available to him for cross-examination. McCormick on Evidence, § 9, (2d) Ed., p. 17 (1972).

(17) Appellant contends the court erred in refusing to allow him to cross-examine Dr. Camp regarding records of the appellant's examination by the State. Appellant has abandoned this argument, and we conclude it is without merit.

(18) Appellant argues the court erred in refusing to submit to the jury as mitigating circumstances subsections (2) and (6) of Code § 16-3-20(C)(b).

Section 16-3-20(C)(b)(2) provides: "The murder was committed while the defendant was under the influence of mental or emotional disturbance." Section 16-3-20(C)(b)

(6) provides: "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."

While it was established that appellant was a borderline mental retardate, the testimony indicated he was able to appreciate the criminality of his conduct and to conform to the requirements of the law. In fact, one expert witness stated appellant could communicate on a college level. We conclude the trial judge was justified in refusing to charge the above mitigating circumstances.

(19) Appellant asserts the South Carolina death penalty statute, Code § 16-3-20 is unconstitutional. The constitutionality of our death statute was upheld recently in *State v. Shaw, et al.,* 255 S. E. (2d) 799 (S. C. 1979).

We conclude no error was committed in the guilt stage of the bifurcated proceeding. Therefore, we affirm appellant's conviction.

Upon a conviction for murder, the trial court is bound by law to conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. Code § 16-3- 20, Cum. Supp. 1978. Whenever the death penalty is imposed, the sentence is mandatorily reviewed by this Court. Code § 16-3-25, Cum. Supp. 1978.

We agree with appellant that due to improper closing arguments by the solicitor during the sentencing phase of the trial, appellant's death sentence must be reversed.

The solicitor made the following remarks to the jury:

"If you make a recommendation of the death penalty, it does not stop there because you are making that recommendation to the Judge; he must review the facts of the case. He must review your recommendation and then he must decide if you are right or not in your recommendation. No other crime in South Carolina has that. Then, he makes his deter-

mination. He can say you were wrong and give the defendant life imprisonment. He can say that you were right, that the facts did warrant the death penalty, and he can make an affirmative finding that the facts and evidence warranted the death penalty in this case. It doesn't stop with him. There's an automatic review by the South Carolina Supreme Court, the five highest justices in this State. They will determine everything that has happened here since last·Monday; they will look at the evidence; they will look at your recommendation; they will look at Judge Moore's rulings and findings; and then they will see whether any error committed; whether it be factually or legally. They will determine whether your recommendation was right or not. They, too, can reverse you and the Judge and give life imprisonment, or they, too, can affirm what you did, what Judge Moore did, and they can affirm the death penalty. But it doesn't stop with them. It can be appealed on to the United States Supreme Court in Washington, nine of the highest justices in the land. They look at everything the South Carolina Supreme Court did, everything Judge Moore did, everything that you did, everything that we did, and determine whether the facts in the case warrant the death penalty " (Tr. p. 1198-1200).

The trial court overruled appellant's counsel's objection to the solicitor's argument. This was error.

Under our capital punishment statute, the jury is given the considerable burden of deciding whether a defendant convicted of murder will live or die. Comments concerning the appellate review of a death sentence imply to the judge that its responsibility for determining the fate of the defendant is lessened.

The Supreme Court of Georgia has considered this question on several occasions, and has concluded that remarks by a prosecutor about appellate safeguards suggest to the jury that it may pass the responsibility for a death sentence on to a higher court, and require reversal of the sentence. *Prevatte v. State,* 233 Ga. 929, 214 S. E. (2d) 365 (1975);

*Fleming v. State,* 240 Ga. 142, 240 S E. (2d) 37 (1977);
*Hawes v. State,* 240 S. E. (2d) 833 (Ga. 1977). This view
is in accord with the rule expressed in 75 Am. Jur. (2d),
Trial, § 230, p. 309:

"Comments by the prosecuting attorney in his argument
to the jury on the power of the court to suspend sentence or
to set the jury's verdict aside, or statements that a higher
court has the power to review the finding of the jury on the
weight of evidence, are calculated to induce the jury to dis-
regard their responsibility, and are improper."

We conclude the solicitor's closing argument diverted the
jury from its duty to decide appellant's punishment on the
basis of the evidence presented, and impermissibly suggested
to the jury panel that the responsibility for appellant's sen-
tence would rest with a higher tribunal. Moreover, the trial
judge failed to charge the jury that it could recommend life
imprisonment even if it found the existence of one or more
statutory aggravating circumstances beyond a reasonable
doubt. The omission of this instruction to the jury was an
"arbitrary factor," Code § 16-3-25(C)(1), Cum. Supp.
1978, also requiring reversal of the death penalty imposed on
appellant in this case. See *Spivey v. State,* 241 Ga. 477, 246
S. E. (2d) (1978); *Fleming v. State, supra.* Accordingly,
the death sentence imposed on appellant is set aside, and the
case is remanded for a resentencing proceeding conducted by
the trial court pursuant to Code § 16-3-25(E)(2), Cum.
Supp. 1978.

Affirmed in part; vacated and remanded.

LEWIS, C. J., RHODES and GREGORY, JJ., and JOSEPH R.
Moss, Acting Associate Justice, concur.