UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

DONALD ALLEN JONES,
Petitioner-Appellant,

v.

WILLIAM CATOE, Commissioner,

South Carolina Department of
Corrections; CHARLES CONDON,
Attorney General, State of South
Carolina,
Respondents-Appellees.

No. 00-10

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
C. Weston Houck, District Judge.
(CA-99-1764-6-12AK)

Argued: February 26, 2001

Decided: May 29, 2001

Before WILKINS, NIEMEYER, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Wilkins wrote the opinion,
in which Judge Niemeyer and Judge Luttig joined.

_____

COUNSEL

ARGUED: Teresa Lynn Norris, CENTER FOR CAPITAL LITIGA-
TION, Columbia, South Carolina, for Appellant. Donald John
Zelenka, Assistant Deputy Attorney General, Columbia, South Caro-

lina, for Appellees. **ON BRIEF:** Thomas R. Haggard, Ridgeway, South Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Donald Allen Jones appeals an order of the district court denying his petition for a writ of habeas corpus, in which he challenged his conviction and death sentence for the murder of Ned Plyler, Sr. See 28 U.S.C.A. § 2254 (West 1994 & Supp. 2000).[1] On appeal, Jones raises only issues pertaining to his death sentence. For the reasons set forth below, we affirm the denial of habeas relief.

I.

The following statement of facts is taken from the opinion of the South Carolina Supreme Court on Jones' direct appeal of his convictions and sentence:

> Mr. and Mrs. Ned W. Plyler, Sr., operated a Sealtest dairy in Lancaster County. [Jones] worked at the dairy while a teenager. The parties experienced little animosity other than minor disputes over the amount of [Jones'] paycheck.
>
> On Sunday, October 9, 1983, [Jones] and a friend broke into a house belonging to the friend's grandfather and stole a .410 gauge shotgun and shotgun shells. [Jones] told the

_____

[1] Jones named William Catoe, Commissioner of the South Carolina Department of Corrections, and Charles Condon, Attorney General of South Carolina, as Respondents. For ease of reference, we will refer to Respondents as "the State" throughout this opinion.

2

friend that he needed help robbing someone and that he would give him $25,000 for his aid. He said he planned to tie the victim and have him write a check payable to[Jones].

On Tuesday, October 11, 1983, [Jones] went to the Plylers' country home before they arrived and smashed the glass in a bedroom window. He found a pistol inside and began shooting the wall in the hallway. He also shot the Plylers' three dogs, and stole six or seven silver dollars and some change. He then lay in wait for the Plylers in the garage.

Geraldine Plyler testified that she and her husband reached their home at about 5:30 P.M. Mr. Plyler carried three $100 bills and two checks in his shirt pocket. As he approached the door of his home, [Jones] appeared suddenly with a shotgun. He demanded money and shot Mr. Plyler at close range near the heart. The victim fell forward on his face in front of his wife. [Jones] produced a pistol, demanded $79,000, and directed Mrs. Plyler to remove the money from her husband's pocket. She was unable to do so, and [Jones] retrieved the money. Mr. Plyler groaned, and [Jones] shot him in the back of the head. Mrs. Plyler pleaded with [Jones] not to shoot him again, but he shot him again in the head.

[Jones] then took Mrs. Plyler into the house and told her he had always wanted her. He then raped her at gunpoint. He searched her purse for money and took her into various rooms of the house, tying her in each room to furniture. She finally begged him to kill her, but he refused saying he wanted her alive in the morning to write a check.[Jones] tied, bound, and gagged her and left. However, he returned shortly to see whether she had attempted to escape. He then drove away in the Plyler truck. She freed herself and ran through the nearby pastures, trying to reach the home of a nephew. Before she reached there, [Jones] returned and began driving down the road looking for her. At one point, he stopped the truck extremely near where she crouched

3

behind a fence, but he drove on. She escaped to the nearby home at about 8:00 P.M. and reported the crimes.

State v. Jones, 340 S.E.2d 782, 782-83 (S.C. 1985) [hereinafter Jones I].

Jones was convicted of murder, armed robbery, rape, housebreaking, grand larceny of a motor vehicle, and kidnaping, and he was sentenced to death. The South Carolina Supreme Court affirmed the convictions and death sentence. See id. at 784. Subsequently, the United States Supreme Court vacated the judgment and remanded for reconsideration in light of Skipper v. South Carolina, 476 U.S. 1 (1986). See Jones v. South Carolina, 476 U.S. 1102 (1986). The South Carolina Supreme Court then vacated Jones' sentence and remanded for resentencing.

At resentencing, Jones presented testimony from Dr. Diane R. Follingstad, a clinical psychologist. Dr. Follingstad testified that Jones' overall I.Q. was 67, in the mentally retarded range, and that his I.Q. as it related to problem solving was only 63. Dr. Follingstad also testified that she found evidence of brain damage. Ultimately, Dr. Follingstad concluded that Jones was likely to act impulsively and was unable to think abstractly about the morality or long-term consequences of his actions. On cross-examination, Dr. Follingstad agreed with counsel for the State that Jones was unlikely to change.

Defense counsel presented several other witnesses to testify regarding Jones' childhood. Patricia Threatt, Jones' third-grade teacher, testified that Jones worked very hard in school but his efforts were hampered by a poor memory and a severe speech impediment. Other family members also mentioned that Jones had a speech problem. Various family members testified that Jones began to withdraw from the family and to act strangely after the death of his sister in 1979. According to witnesses, Jones refused to attend the funeral and stated that he wanted to die, too. Jones ransacked his mother's house on two occasions, and he engaged in strange behaviors such as dressing inappropriately (e.g., shorts in the winter, a coat in the summer) and repeatedly filling a bucket and rinsing his head. Jones' mother testified that he would sit on the edge of a bridge near the house "like he was just in a deep wonder." J.A. 68. Jones' uncle testified that he tried

4

to speak with Jones one day while Jones was sitting on the bridge, but he was unresponsive.

Against the advice of his attorneys, Jones testified on his own behalf. Jones denied that he was of low intelligence and denied or explained some of the testimony of family members. For example, Jones claimed that he used buckets of water to wash his hair because the bathtub leaked. Jones stated that he shot Plyler because he could not simply ask him for money, and asserted that he raped Mrs. Plyler because "Mr. Plyler was dead." Id. at 124. When defense counsel asked Jones why he shot Plyler with the pistol, Jones responded, "Well, when I first blast him with the [shotgun], he was still living." Id. at 89. Jones also admitted that he planned the robbery in advance.

On rebuttal, the State presented testimony from Dr. Donald W. Morgan, who had previously examined Jones to determine whether he was competent to stand trial. Dr. Morgan stated that Jones was not retarded but rather was of "dull-normal" intelligence. Id. at 139. On cross-examination, Dr. Morgan agreed that Jones might be psychotic.

The jury sentenced Jones to death, the South Carolina Supreme Court affirmed the sentence on direct appeal, see State v. Jones, 378 S.E.2d 594, 598 (S.C. 1989) [hereinafter Jones II], and the United States Supreme Court denied certiorari, see Jones v. South Carolina, 494 U.S. 1060 (1990). Jones thereafter sought post conviction relief (PCR), which was denied by the circuit court. The South Carolina Supreme Court granted certiorari as to whether trial counsel were constitutionally ineffective for failing to develop additional mitigating evidence. The court affirmed the denial of PCR, see Jones v. State, 504 S.E.2d 822, 828 (S.C. 1998) [hereinafter Jones III], and the United States Supreme Court again denied certiorari, see Jones v. South Carolina, 526 U.S. 1021 (1999).

Jones thereafter filed this habeas petition in federal district court. As is pertinent to this appeal, Jones claimed that the trial court erred in its instructions to the jury regarding mitigating circumstances and that trial and appellate counsel were constitutionally ineffective. The district court denied relief but granted a certificate of appealability.

Because Jones' habeas petition was filed after the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act

5

(AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, the amend-ments to 28 U.S.C.A. § 2254 effected by § 104 of the AEDPA govern our resolution of this appeal. See Slack v. McDaniel, 529 U.S. 473, 481 (2000). Accordingly, we may not grant habeas relief unless, at a minimum, the rejection of Jones' claims by the South Carolina courts "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1). As the Supreme Court recently explained in Williams v. Taylor, 529 U.S. 362, 413 (2000), a state court decision is "contrary to" clearly established federal law if the state court has "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." A state court decision consti-tutes an unreasonable application of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's deci-sions but unreasonably applies that principle to the facts of the prison-er's case." Williams, 529 U.S. at 413.

## II.

We first consider Jones' challenges to the jury instructions given by the trial court. Jones contends that he was entitled to an instruction regarding the statutory mitigating factor that "[t]he murder was com-mitted while the defendant was under the influence of mental or emo-tional disturbance," S.C. Code Ann. § 16-3-20(C)(b)(2) (Law. Co-op. Supp. 2000), and that the denial of this instruction violated his right to due process. Jones also maintains that the instructions of the trial court regarding nonstatutory mitigating circumstances were constitu-tionally deficient.

## A.

At trial Jones requested an instruction regarding the statutory miti-gating circumstance that the murder was committed while he was under the influence of mental or emotional disturbance. Jones claimed that the instruction was supported by Dr. Follingstad's testimony regarding Jones' mental retardation and possible brain damage. The trial court refused to give the requested instruction, and the South

6

Carolina Supreme Court affirmed, reasoning that it was not supported by any evidence presented at trial. See Jones II , 378 S.E.2d at 596-97.

The State contends that even if the South Carolina Supreme Court incorrectly determined that no evidence supported the requested instruction, this would be an error of state law that would not entitle Jones to federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). We disagree. The State is correct, of course, that the South Carolina Supreme Court is the ultimate arbiter of the meaning of South Carolina law, see Wainwright v. Goode , 464 U.S. 78, 84 (1983) (per curiam); thus, we may not question a determination of the meaning of the "mental and emotional disturbance" mitigator by the South Carolina Supreme Court. Jones contends, however, that the ruling of the South Carolina Supreme Court did not rest on such a state-law determination, but rather that the court was simply incorrect in its determination that the evidence presented at sentencing did not support the "mental or emotional disturbance" mitigator. If this is so, Jones was entitled to the instruction as a matter of state law. See S.C. Code Ann. § 16-3-20(C) (Law. Co-op. Supp. 2000) (providing that the trial judge "shall include in his instructions to the jury" any statutory mitigating circumstance supported by the evidence). Jones maintains that the denial of an instruction to which he was entitled as a matter of state law would violate his right to due process under the federal Constitution. Cf. Green v. Catoe, 220 F.3d 220, 224 (4th Cir. 2000) (noting that federal due process protections attach to some state-created rights), petition for cert. filed , ___ U.S.L.W. ___ (U.S. Nov. 24, 2000) (No. 00-7169).

The denial of the mitigating instruction was consistent with South Carolina law and therefore could not have violated any due process right possessed by Jones. The South Carolina Supreme Court has consistently held that the "mental or emotional disturbance" mitigator is not appropriate when the claimed disturbance is a chronic condition rather than an acute one. For example, the court has held that evidence that the defendant was a "borderline mental retardate" did not require the trial court to give the instruction. State v. Tyner, 258 S.E.2d 559, 565 (S.C. 1979). Similarly, evidence that the defendant was reared in an abusive environment did not justify an instruction on the "mental or emotional disturbance" mitigator. See State v. Cain, 377 S.E.2d 556, 560 (S.C. 1988) (rejecting argument that history of

7

"physical and psychological abuse" justified instruction on "mental or emotional disturbance" because, "[w]hile ample evidence reconstructed the often deplorable conditions under which appellant was reared, no evidence existed to show that appellant acted under the influence of a mental or emotional disturbance <u>at the time he committed the murders</u>" (emphasis added)).

In contrast, the South Carolina Supreme Court has consistently held that an instruction on the "mental or emotional disturbance" mitigator is required when the defendant presents evidence of an acute condition present at the time of the murder. <u>See State v. Young</u>, 409 S.E.2d 352, 355-56 (S.C. 1991) (holding that instruction was required when evidence indicated that defendant "had been drinking heavily on the night of the murder"); <u>State v. Plemmons</u>, 370 S.E.2d 871, 871-72 (S.C. 1988) (holding that evidence of intoxication requires instruction on "mental or emotional disturbance" mitigator unless trial court otherwise instructs that intoxication may be a mitigating factor); <u>State v. Pierce</u>, 346 S.E.2d 707, 710-11 (S.C. 1986) (holding that instruction on mitigating factor was required when evidence was presented that defendant "was extremely intoxicated, smoking marijuana, and injecting drugs intravenously during the commission of the crimes").

The evidence presented by Jones--that he is mentally retarded and suffered many difficulties as a child and young man--is similar to the evidence presented in <u>Tyner</u> and <u>Cain</u>, which the South Carolina Supreme Court found inadequate to warrant instruction on the "mental or emotional disturbance" mitigator. And, no evidence was presented that Jones was suffering from some acute mental condition such as intoxication during the murders. Accordingly, the denial of the instruction was consistent with South Carolina law and the ruling of the South Carolina Supreme Court was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

B.

Next, Jones challenges the instructions of the trial court regarding the manner in which the jury was to consider mitigating evidence. The relevant portion of the jury charge was as follows:

> Now, in arriving at your recommendation <u>you may consider any mitigating circumstances otherwise authorized or</u>

8

allowed by law, and you may consider certain so-called statutory aggravating and mitigating circumstances which are supported by the evidence.

    . . . .

    . . . [Y]ou can recommend that the Defendant be sentenced to life imprisonment even if you unanimously find beyond a reasonable doubt that one or more of the alleged statutory aggravating circumstances existed at the time that the murder in the case was committed.

    Now, in addition to considering the statutory aggravating circumstances, you may also consider each alleged statutory mitigating circumstance[] supported by the evidence. . . .

    Before you can recommend the imposition of the life sentence it is not necessary, and I repeat, it is not necessary for you to find beyond a reasonable doubt the existence of any alleged statutory mitigating circumstances. While it is necessary for you to find beyond a reasonable doubt the existence of at least one alleged statutory aggravating circumstance before you can recommend that the Defendant be sentenced to death, it is not required that you find beyond a reasonable doubt the existence of at least one . .. alleged statutory mitigating circumstance in order to recommend that the Defendant be given life imprisonment.

    As a matter of fact, you may recommend that the Defendant receive a life sentence irrespective of whether you find the existence in the evidence of an alleged statutory mitigating circumstance or not, but where you consider an alleged statutory mitigating circumstance, it is proper for you to consider only a statutory mitigating circumstance that is supported by the evidence. As I say, however, you may recommend a life sentence without finding the existence of an alleged statutory mitigating circumstance, and as I have told you before, may recommend the imposition of a life sentence even should you find beyond a reasonable doubt the existence of an alleged statutory aggravating circumstance.

9

. . . .

> Now, what statutory mitigating circumstances may you
> properly consider here? . . . That the Defendant has no sig-
> nificant history of prior criminal conviction involving the
> use of violence against another person. Another, the capac-
> ity of the Defendant to appreciate the criminality of his con-
> duct or to conform his conduct to the requirements of law
> was substantially impaired. The age or mentality of the
> Defendant at the time of the crime, <u>and any other mitigating
> circumstance or circumstances otherwise authorized by law</u>.

J.A. 156-60 (emphasis added). Jones contends that these instructions
were flawed because they precluded the jury from considering evi-
dence that was mitigating but which did not support one of the statu-
tory mitigating factors. On direct appeal, the South Carolina Supreme
Court rejected Jones' challenge to the instructions on the basis that
the direction to consider "any other mitigating circumstance or cir-
cumstances . . . authorized by law" adequately informed the jury that
it could consider nonstatutory mitigating factors. <u>See Jones II</u>, 378
S.E.2d at 597; <u>see also State v. Copeland</u>, 300 S.E.2d 63, 71 (S.C.
1982) (holding that instruction to consider "any mitigating circum-
stances otherwise authorized or allowed by law" adequately alerted
the jury that it could consider nonstatutory mitigating factors (internal
quotation marks omitted)).

A jury shall "not be precluded from considering, <u>as a mitigating
factor</u>, any aspect of a defendant's character or record and any of the
circumstances of the offense that the defendant proffers as a basis for
a sentence less than death." <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978)
(plurality opinion). In determining whether challenged instructions
violated this prohibition by placing relevant mitigating evidence
beyond the effective reach of the jury, a reviewing court must deter-
mine "whether there is a reasonable likelihood that the jury has
applied the challenged instruction in a way that prevents the consider-
ation of constitutionally relevant evidence." <u>Boyde v. California</u>, 494
U.S. 370, 380 (1990). Although the defendant need not establish that
it was more likely than not that the jury interpreted the instruction
erroneously, a mere possibility of an incorrect understanding is not
sufficient to establish an Eighth Amendment violation. <u>See id.</u> More-

10

over, the court must not "engage in a technical parsing" of the instruction but rather must evaluate it "with a commonsense understanding of the instruction[] in the light of all that has taken place at the trial." Johnson v. Texas, 509 U.S. 350, 368 (1993) (internal quotation marks omitted).

Having examined the ruling of the South Carolina Supreme Court in light of these principles, we conclude that the rejection of Jones' challenge to the mitigation instructions was neither contrary to, nor an unreasonable application of, clearly established federal law. Viewed as a whole and in the context of the mitigation case presented by Jones, there is no reasonable likelihood that the jury understood the instructions to preclude consideration of nonstatutory mitigating factors. See Boyde, 494 U.S. at 383-84 (concluding that misunderstanding of instructions was unlikely in view of four days of testimony which would have been "a virtual charade" had the instructions not permitted the jury to consider it (internal quotation marks omitted)). In particular, the trial court instructed the jury that it could consider "any other mitigating circumstance or circumstances" authorized by law,[2] J.A. 160, and it specifically instructed the jury that a life sentence could be returned even if the jurors did not find the existence of any statutory mitigating factor. Under these circumstances, the jury was not precluded from considering relevant mitigating evidence.

III.

We now turn to Jones' assertions that trial and appellate counsel were constitutionally ineffective. To prevail on these claims, Jones must demonstrate that his attorneys' "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington,

_____

[2] Jones complains that the trial court erred in failing to provide further instruction as to what was meant by "other mitigating . . . circumstances" authorized by law. However, the Supreme Court has held that the Eighth Amendment does not require a trial court to specifically instruct the jury regarding the meaning of mitigating evidence or to give direction regarding how mitigating evidence is to be considered. See Buchanan v. Angelone, 522 U.S. 269, 275-76 (1998).

11

466 U.S. 668, 688, 694 (1984). Review of counsel's performance is "highly deferential." Id. at 689. And, competency is measured against an objective standard of reasonableness in light of all the circumstances. See id. at 687-88. Attorneys are afforded a strong presumption that their performance was within the broad range of professionally competent assistance. See id. at 689. For the reasons set forth below, we conclude that neither of Jones' claims of ineffective assistance of counsel has merit. Accordingly, the rejection of these claims by the South Carolina courts neither was contrary to, nor involved an unreasonable application of, clearly established federal law.

A.

With respect to his assertion that resentencing counsel were constitutionally ineffective, Jones first contends that counsel should have presented additional expert testimony regarding his mental status. At the PCR hearing, Jones presented testimony from four expert witnesses. In sum, this testimony was that Jones was mentally retarded, suffered from a speech impediment, likely had an organic brain dysfunction, had difficulty with abstract concepts, and was possibly psychotic. See Jones III, 504 S.E.2d at 826. This is basically the same evidence as was presented to the sentencing jury through Dr. Follingstad, Patricia Threatt, and Jones' family members. Even assuming that counsel were ineffective for failing to uncover and present this evidence, there is no likelihood that Jones was prejudiced by the failure to present cumulative testimony. As the South Carolina Supreme Court concluded in rejecting Jones' claim of ineffective assistance, "all that would have occurred at the resentencing[had the additional testimony been presented] was that the jury would have heard a more elaborate version of Dr. Follingstad's testimony." Id. And, while one witness could have produced additional testimony that Jones was psychotic, such evidence would at best have been a"double-edged sword" that would have hurt Jones as much as it helped him.[3] See

_____

[3] Testimony that Jones might be psychotic came in on the State's rebuttal case, when it presented the testimony of Dr. Morgan. Ironically, Jones complains that appellate counsel was constitutionally ineffective for failing to argue on direct appeal that the admission of this testimony violated Jones' constitutional rights.

12

<u>Howard v. Moore</u>, 131 F.3d 399, 421 (4th Cir. 1997) (en banc) (holding that petitioner was not prejudiced by failure to introduce evidence in mitigation that would have hurt as much as it helped).

Jones also argues that counsel failed to present evidence that he was raised in an environment of extreme poverty, abuse, and neglect. Among other things, Jones contends that evidence should have been presented that the family was so poor that they burned portions of the house for warmth and sometimes ate dirt, and that Jones' relatives encouraged him to sniff gasoline fumes as a child. In light of the heinous nature of the crime and the overwhelming evidence against Jones, there is no reasonable likelihood that presentation of this evidence would have altered the outcome of the resentencing proceeding.

B.

Jones also challenges the performance of appellate counsel, maintaining that his appellate attorney was ineffective for failing to argue that the admission of Dr. Morgan's testimony violated <u>Estelle v. Smith</u>, 451 U.S. 454, 470-71 (1981) (holding that use of statements made during competency evaluation to establish future dangerousness violated defendant's Sixth Amendment right to counsel). The PCR court rejected this claim, reasoning that trial counsel's failure to object to the admission of Dr. Morgan's testimony precluded appellate counsel from raising the issue. Alternatively, the PCR court held that because the admission of Dr. Morgan's testimony did not violate Jones' constitutional rights, appellate counsel was not ineffective for failing to raise it. We agree with the latter conclusion.**4**

Appellate counsel is not required to raise every colorable claim on appeal; rather, "winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (internal quotation marks omitted); <u>see Jones v. Barnes</u>, 463 U.S. 745, 751-53 (1983). At a minimum, appellate counsel cannot be found ineffective for failing to raise issues as to which there is no reasonable likelihood of success.

_____
**4** Accordingly, we do not address Jones' argument that the PCR court incorrectly concluded that the <u>Estelle</u> claim was defaulted.

13

Appellate counsel was not ineffective for failing to raise the <u>Estelle</u> claim because, even if Jones is correct that Dr. Morgan's testimony was improperly admitted, the error was harmless beyond a reasonable doubt, <u>see Satterwhite v. Texas</u>, 486 U.S. 249, 257-58 (1988) (holding that <u>Estelle</u> violations are subject to harmless error analysis); therefore, this claim was not reasonably likely to succeed. Dr. Morgan's testimony consisted of two points: that Jones was of "dull-normal" intelligence and that Jones might be psychotic. Dr. Morgan's opinion of Jones' intelligence level was hardly a devastating blow to the defense. Rather, it constituted nothing more than a relatively minor disagreement with Dr. Follingstad's opinion. The testimony that Jones might be psychotic was elicited by defense counsel on cross-examination, and Jones himself contends that this evidence was mitigating, not aggravating.

IV.

For the reasons set forth above, we affirm the denial of habeas relief.

<u>AFFIRMED</u>

14