21799

The STATE, Respondent, v.
Louis J. TRUESDALE, Jr., Appellant.
(296 S. E. (2d) 528)

*David I. Bruck* and *Assistant Appellate Defender Tara D. Shurling, of S. C. Commission of Appellate Defense,* Columbia, *for appellant.*

*Attorney Gen. Daniel R. McLeod, Senior Asst. Atty. Gen. Brian P. Gibbes* and *State Atty. Carolyn M. Adams,* Columbia, and *Sol. John R. Justice,* Chester, *for respondent.*

October 19, 1982.

*Per Curiam:*

Appeal is taken from a sentence of death recommended by a jury and confirmed by the trial judge after appellant entered guilty pleas to indictments for murder, kidnapping and first degree criminal sexual conduct. We vacate the guilty plea and remand for a new trial.

This Court has recently held that section 16-3-20(B), ■ Code of Laws of South Carolina, 1976 (Cum. Supp. 1981), requires sentencing by the trial judge, not a jury, when jury trial has been waived or the defendant has entered a guilty plea, *State v. Patterson,* 278 S. C., 295 S. E. (2d) 264 (1982). We are compelled by that holding to vacate this appellant's plea, for in this case, as in Patterson, the sentencing phase of a capital proceeding was improperly tried to a jury. Because issues have been raised which may arise again on retrial, we address several questions by way of guidance to the trial court.

In pretrial motions, appellant sought a change of venue, a limitation on the use of peremptory challenges by the solicitor, and certain restrictions upon the disqualification of jurors for cause. These motions were denied. After the jury had been selected and sworn, appellant changed his plea to each indictment from "not guilty" to "guilty." The record reveals that moments before the court accepted appellant's guilty pleas, defense counsel made an equivocating statement the crucial portion of which follows:

... to sum up what I'm saying, Judge, to the extent that the Court was correct in denying pre-trial motions numbers 3, 4 and 5, it is my judgment that this plea was voluntary. However, to the extent that the denial of any of these three motions did, as we maintain, deny this young man a jury that was constitutionally selected, it would be my judgment and I think the record should reflect our position, that the plea is in fact the product of what we assert to be a deprivation of his constitutional rights. . . .

In effect, appellant here entered a conditional plea which is a practice not recognized in South Carolina and a practice which we expressly disapprove. Pleas of guilty are unconditional, and if an accused attempts to attach any condition or qualification thereto, the trial court should direct a plea of not guilty. *Roberts v. Warden*, 221 Md. 576, 155 A. (2d) 891, cert. denied *Roberts v. Pepersack*, 362 U. S. 953, 80 S. Ct. 866, 4 L. Ed. (2d) 871; 22 C. J. S. Criminal Law § 423(1); 21 Am. Jur. (2d), Criminal Law, section 487. The basis for this rule is, of course, the settled doctrine that a guilty plea constitutes *waiver* of all prior claims of constitutional rights or deprivations thereof. *State v. Patterson*, supra; *Whetsell v. State*, 276 S. C. 295, 277 S. E. (2d) 891; *Rivers v. Strickland*, 264 S. C. 121, 213 S. E. (2d) 97; *Lefkowitz v. Newsome*, 420 U. S. 283, 289, 95 S. Ct. 886, 889, 43 L. Ed. (2d) 196 (and cases cited therein). It was thus improper for appellant to seek to preserve the constitutional issues enumerated above while entering pleas of guilty. It was error of the trial court to accept the pleas on such terms.

By pretrial motions, appellant sought to accomplish several goals. First he requested a change of venue prior to *voir dire* examination of prospective jurors. Next he sought to control the manner in which the State exercised peremptory challenges, ostensibly to prevent the solicitor from practicing racial discrimination. Finally the appellant attempted to prevent disqualification of jurors under section 16-3-20(E), Code, upon the theory that a jury so selected could not be impartial.

The motions were denied, and properly so, for this Court has basically settled these issues on prior occasions. It appears that our holdings have not been sufficiently emphatic to deter the reopening of closed questions. We are concerned

both that dilatory pretrial motions unduly burden the judicial process itself and that, practically speaking, the indulgence of frivolous and futile motions can bring about an unwise depletion of the obviously limited public funds available for the defense of indigents. We therefore address each of appellant's motions with the aims of clarity and finality.

*Change of Venue:* In support of his motion, appellant offered newspaper clippings, transcripts of radio broadcasts, numerous form affidavits, and testimony of citizens and local attorneys to show that an impartial jury could not be selected in Lancaster County. A trial judge ruling upon such a motion exercises his sound discretion and will not be reversed absent an abuse of discretion. *State v. Tyner,* 273 S. C. 646, 649, 258 S. E. (2d) 559 (and cases cited therein). There was no error in denial of the motion based upon the showing just recited.

In addition to the foregoing, appellant offered the results of a public opinion survey conducted by Professor Joseph E. Jacoby, University of South Carolina College of Criminal Justice. The object of this survey was to raise a presumption of prejudice that would obviate any subsequent *voir dire* of prospective jurors. South Carolina has no *per se* rule on presumptive prejudice, and this Court declines to adopt one. We note that the presumption is rarely indulged, even in federal courts. In only one instance, that our research reveals, has the Supreme Court of the United States found that empaneling of a jury and any subsequent trial would have been mere "hollow formality" because of a showing made prior to the jury selection process. In that case a sound film of the accused's confession, made under outrageous conditions, was televised repeatedly throughout the trial vicinity. *Rideau v. Louisiana,* 373 U. S. 723, 726, 83 S. Ct. 1417, 1419, 10 L. Ed. (2d) 663. That decision obviously provides little guidance in the circumstances of this appeal.

Perhaps the best known of federal cases involving *pre-voir dire* presumption of prejudice was the trial of former aides to Richard Nixon arising out of the Watergate incident. *U. S. v. Haldeman,* D. C. Cir., 559 F. (2d) 31, cert. denied 431 U. S. 933, 97 S. Ct. 2641, 53 L. Ed. (2d) 250, rehearing denied 433. U. S. 916, 97 S. Ct. 2992, 53 L. Ed. (2d) 1103. Moving for a change of venue before jury *voir dire,* the defendants in Haldeman

offered a nationwide opinion survey in support of their contention that the population of Washington, D. C., could not yield a fair and impartial jury. The motion was denied, and on review the appellate court offered the following advice:

> It is our judgment that in determining whether a fair and impartial jury could be empanelled the trial court did not err in relying less heavily on a poll taken in private by private pollsters and paid for by one side than on a recorded, comprehensive *voir dire* examination conducted by the judge in the presence of all parties and their counsel pursuant to procedures, practices and principles developed by the common law since the reign of Henry II. 559 F. (2d) at 64.

See also *U. S. v. Eagle*, 586 F. (2d) 1193 (8th Cir.); *U. S. v. Mandel*, 431 F. Supp. 90 (D. Md. 1977); *State v. Coleates*, 53 A. D. (2d) 1018, 386 N. Y. S. (2d) 525 (and cases cited therein).

The public opinion survey of Professor Jacoby was commissioned by the appellant and has subsequently been published and discussed by Dr. Jacoby in 73 *Journal of Criminal Law and Criminology* 378-387 (Spring 1982). A staff of seventeen interviewers, including defense counsel, sampled the population of Lancaster County in a ratio of seventy-nine percent white residents and twenty-one percent black. The survey revealed over sixty percent of the respondents had no opinion regarding appellant's guilt or believed that he was in fact not guilty. In a county where such a majority shows no preconception of the defendant's guilt, a presumption of prejudice could hardly arise. To grant a change of venue in such circumstances would be an abuse of discretion. The trial court was clearly entitled to proceed with *voir dire* of prospective jurors.

The instant case vividly illustrates the difficulty encountered in the rise of survey data. While Professor Jacoby described the design of his survey in considerable detail, he nowhere explained to the court what, if any, behavioral model informed his practice of the surveying art. When asked why his method was superior to *voir dire* under oath, the witness set forth several sweeping assumptions about human nature:

> Your Honor, people are very well aware that they are not supposed to acknowledge being prejudiced and biased. Everyone knows that. I think it's a matter of common

sense, Your Honor. I don't think it's a matter of professional training that people know that they are not supposed to acknowledge being biased.

These characterizations of contemporary societal standards were refuted during *voir dire* when eight prospective jurors acknowleged specific biases and expressed doubt that they could serve impartially in the case. .

An equally profound difficulty lies in the standards of proof applied in scholarly as opposed to judicial inquiries. Whereas academic criticism of survey data looks to the design and explanatory power of the work, assuming the integrity of its implementation, a court of law must at the threshold establish to a legal certainty that each interview was conducted in accordance with the survey plan. Again, in the same instant case, Professor Jacoby described a short training course given to all interviewers but could only assume they followed instructions. He produced only two of seventeen participants, not counting defense counsel, to so testify in court. The fact that defense counsel conducted a part of the interview is so obviously compromising, at least from a judicial point of view, that the resulting data hardly warrants hearing by the court.

It was therefore not an abuse of discretion for the trial judge to proceed to *voir dire* examination of a jury notwithstanding the attempt to establish prejudice by these uncertain methods.

*Peremptory Challenges:* Before jury selection began, the appellant sought an order of the trial court enjoining the solicitor from using peremptory challenges in a racially discriminatory manner, specifically to prevent exclusion of black jurors. It is revealing that the motion itself offered no hint of how such an order would be written much less enforced. It can only be imagined that the court would be required after every suspect strike to place the solicitor under oath and examine him to establish the reasons for his challenge. In the alternative, the trial court could have arbitrarily imposed a limit or prohibition upon any challenge by the State to any black juror.

Not only was this request bizarre, but it also assumed a power in the courts of this State which does not exist. The constitutionality of peremptory challenges as well as their role in the judicial process are now well settled. *Swain v.*

*Alabama,* 380 U. S. 202, 85 S. Ct. 824, 13 L. Ed. (2d) 759, reh. den. 381 U. S. 921, 85 S. Ct. 1528, 14 L. Ed. (2d) 42. The existence of peremptory challenges in South Carolina is a matter of legislative determination. See section 14-7-1110, Code. Neither the trial judge nor this Court can impose prior limitations upon the use of these challenges by either side to any controversy without directly subverting the clear legislative intent. Appellant's motion was thus premature and sought relief which the court simply could not grant.

In *State v. Plath,* 277 S. C. 126, 284 S. E. (2d) 221, we clearly stated that "peremptory challenges may be exercised for any reason or no reason at all." Relying upon this holding alone, *the trial court could have properly declined to entertain appellant's motion at all.* Instead appellant was granted the opportunity to present more statistical data with the aid of testimony by Professor Jacoby.

The gist of Professor Jacoby's testimony was his discovery of a "pattern" of peremptory strikes by the solicitor in Lancaster County. Disregarding troublesome discrepancies revealed on cross-examination and in colloquy with the trial court, the study purported to find that more black jurors than white were struck and increasingly was this so as the charges became more serious. The survey looked solely to race as the controlling factor. Nowhere in the study was effort made to determine or measure the roles played by juror age, education, occupation, address, prior jury service and innumerable other facts used by all trial lawyers in the art of jury selection. There was no effort to determine what, if any, *voir dire* of jurors had occurred in the cases that made up the "pattern." We do not presume the existence of discrimination by officers of the State, and we are not impressed by a showing of "patterns" which does not even begin to account for the obvious variables mentioned above.

It is worth noting that in the instant case, the witness flatly stated: "the jury is going to look like, it is going to be very likely all white." In fact, of the fourteen jurors and alternates ultimately drawn, two were black. The result was a panel of fourteen percent (14%) minority representation in a county where sixteen percent (16%) of the registered voters were black. Proportional representation is not required of the jury selection process, of course. Yet even adopting such a stan-

dard, it appears that appellant's motion was not only premature and improper but without merit in the end.

*Jury Bias:* Finally, appellant moved the trial court to so interpret section 16-3-20(E), Code, as to preclude any *voir dire* of prospective jurors upon the question of capital punishment for purposes of the guilt phase trial. As grounds for the motion, appellant set forth certain conclusory statements about the behavior of jurors: (1) that prospective jurors opposed to capital punishment are disproportionately concentrated among blacks, women and young people in South Carolina and the United States as a whole; (2) persons opposed to capital punishment are less likely to convict a defendant, while persons favoring capital punishment are more likely to convict a defendant. The trial court was spared additional testimony on this point. Instead appellant relied upon Professor Jacoby's survey and the case of *Hovey v. Alameida Superior Court,* 28 Cal. (3d) 1, 168 Cal. Rptr. 128, 616 P. (2d) 1301.

This question has been raised before, and our prior holdings unequivocally declare that *voir dire* examination upon the issue of capital punishment is essential to accomplish the legitimate aim of section 16-3-20(E), Code, which is to assure a jury capable of performing its duty under the law. See *State v. Hyman,* 276 S. C. 559, 281 S. E. (2d) 209. In *State v. Adams,* 277 S. C. 115, 283 S. E. (2d) 582, as well as *Hyman,* supra, and in *State v. Linder,* 276 S. C. 304, 278 S. E. (2d) 335, the theory of "conviction proneness" was placed before this Court on briefs but without the social science input that here occurred. The trial court in this case would have been entitled to give little or no time or weight to appellant's motion on the basis of our holding in *Adams,* supra, as well as the fact that no scheme of proportional representation on trial juries has ever been held to be a requirement of the United States or South Carolina Constitutions.

Appellant's motion provided no basis for the trial court to forego the full *voir dire* mandated by section 16-3-20(E) nor has appellant made any showing sufficient to convince this Court that section 16-3-20(E) as here applied offends the Fourteenth Amendment to the United States Constitution under the standards established in the leading cases. *Duren v. Missouri,* 439 U. S. 357, 99 S. Ct. 664, 58 L. Ed. (2d) 579; *Taylor*

*v. Louisiana,* 419 U. S. 522, 95 S. Ct. 692, 42 L. Ed. (2d) 690; *Witherspoon v. Illinois,* 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776.

We conclude that appellant's pretrial motions, while conceived and pursued with admirable zeal, were totally without merit.

Reversed and remanded.