# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Anthony Allan Jones, II, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2020-000188

---

## ON WRIT OF CERTIORARI

---

Appeal from Charleston County
Robert E. Hood, Circuit Court Judge

---

Opinion No. 28164
Submitted May 16, 2022 – Filed June 21, 2023

---

## AFFIRMED IN PART AND REVERSED IN PART

---

Elizabeth Anne Franklin-Best, of Elizabeth Franklin-Best, P.C., of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General William M. Blitch, Jr., both of Columbia, for Respondent.

Allison Krause Elder and Katherine Weaver Patterson, both of Greenville, for Amici Curiae Root & Rebound, SC Commission on Indigent Defense, Dr. Kate Kleinfelter, Justice 360, and Cornell Law School Juvenile Justice Clinic; Hannah Lyon Freedman, of Columbia, for Amicus Curiae Justice 360; Dr. Aleksandra Boguslawa Chauhan,

of Columbia, for Amicus Curiae SC Commission on Indigent Defense; and John H. Blume, III, of Ithaca, NY, for Amicus Curiae Juvenile Justice Clinic and Cornell Law School.

————————

**CHIEF JUSTICE BEATTY:**  Petitioner Anthony Jones pleaded guilty on December 12, 2016 to first-degree burglary and armed robbery, crimes he committed at the ages of sixteen and seventeen, respectively.  Pursuant to subsection 63-19-20(1),[1] the definitional statute of chapter nineteen in the Juvenile Justice Code, the circuit court had jurisdiction over Jones's charges, rather than the family court.[2]  The

———————————

[1] At the time of Jones's crimes and his plea, the subsection provided as follows:

> "Child" or "juvenile" means a person less than *seventeen* years of age. "Child" or "juvenile" does not mean a person *sixteen* years of age or older who is charged with a Class A, B, C, or D felony as defined in Section 16-1-20 or a felony which provides for a maximum term of imprisonment of fifteen years or more.  However, a person *sixteen* years of age who is charged with a Class A, B, C, or D felony as defined in Section 16-1-20 or a felony which provides for a maximum term of imprisonment of fifteen years or more may be remanded to the family court for disposition of the charge at the discretion of the solicitor.  An additional or accompanying charge associated with the charges contained in this item must be heard by the court with jurisdiction over the offenses contained in this item.

S.C. Code Ann. § 63-19-20(1) (2010) (emphasis added).

[2] The General Assembly amended the provision, effective in 2019:

> "Child" or "juvenile" means a person less than *eighteen* years of age. "Child" or "juvenile" does not mean a person *seventeen* years of age or older who is charged with a Class A, B, C, or D felony as defined in Section 16-1-20 or a felony which provides for a maximum term of imprisonment of fifteen years or more.  However, a person *seventeen* years of age who is charged with a Class A, B, C, or D felony as defined in Section 16-1-20 or a felony which provides for a maximum term of imprisonment of fifteen years or more may be remanded to the family court for disposition of the charge at the discretion of the solicitor.  An additional or accompanying charge associated with the charges

circuit court judge sentenced Jones to ten years in prison for armed robbery and fifteen years for first-degree burglary, with the sentences to run concurrently. Jones did not file a direct appeal. Instead, he filed an application for post-conviction relief ("PCR") on several grounds, including a challenge to the constitutionality of subsection 63-19-20(1). After a hearing, the PCR court dismissed the application, finding the constitutional challenge was not a cognizable PCR claim and, even if it were, the statute was constitutional. We granted Jones's petition for a writ of certiorari to consider whether the PCR court erred.

We conclude Jones properly brought this challenge in his PCR application and subsection 63-19-20(1) is constitutional. However, in keeping with our prior decisions regarding sentencing juveniles, circuit court judges must consider the mitigating factors of youth as identified in *Aiken v. Byars*[3] when sentencing. Consideration of these factors can be done at sentencing; therefore, a separate *Aiken* hearing is not required. Accordingly, we affirm in part and reverse in part.

## I. FACTS & PROCEDURAL HISTORY

On June 7, 2015, Jones entered a home in Dorchester County through an unlocked door. The victim had left her patio door unlocked for neighbors to return furniture. When the victim returned home, she noticed her firearm was missing from her nightstand and her cat was outside. Investigators found fingerprints inside the victim's residence that matched Jones's fingerprints.

Jones used the stolen firearm in an armed robbery in Charleston County on June 28, 2015. Jones contacted the robbery victim regarding a Craigslist advertisement for a laptop. He and a co-defendant met the victim for the purported sale. The co-defendant opened the victim's car door, grabbed the laptop, and pointed a revolver at the victim. Jones and the co-defendant fled with the laptop.

After police identified the vehicle from the victim's description, a high-speed chase ensued. The vehicle crashed into a tree, and Jones and the co-defendant fled. Police eventually arrested Jones and the co-defendant, and they found the laptop in the vehicle and the revolver in a nearby yard. Police also discovered the vehicle

---

contained in this item must be heard by the court with jurisdiction over the offenses contained in this item.

S.C. Code Ann. § 63-19-20(1) (Supp. 2021) (emphasis added).
[3] 410 S.C. 534, 765 S.E.2d 572 (2014).

belonged to Jones's father.  Later, the co-defendant gave a statement implicating Jones as the person who planned the robbery and provided the weapon.

The State indicted Jones for first-degree burglary in Dorchester County on October 1, 2015, and for armed robbery in Charleston County on October 20, 2015. Jones appeared before the circuit court because armed robbery (subsection 16-11-330(A)) is defined as a Class A felony.[4]  S.C. Code Ann. § 16-1-90(A) (2015 & Supp. 2021); *id*. § 63-19-20(1) (2010) (excluding a person sixteen years of age who committed a Class A, B, C, or D felony from the definition of "child" or "juvenile").[5]

Jones agreed to plead guilty to both charges during the plea hearing held in Charleston County on December 12, 2016.  After negotiations, the Dorchester County Solicitor recommended to the court that Jones receive the statutory minimum sentence of fifteen years in prison for the first-degree burglary charge.  The Charleston County Solicitor did not make a sentencing recommendation.

At the time of his plea and sentencing, Jones was eighteen years old and had previously been adjudicated delinquent as a juvenile for second-degree burglary, a weapons charge, and shoplifting.  The plea court sentenced him to fifteen years in prison for first-degree burglary[6] and ten years for armed robbery,[7] to run concurrently.

Following his sentencing, Jones did not pursue a direct appeal.  However, on April 14, 2017, Jones simultaneously filed identical applications for PCR in Dorchester County and Charleston County.  In these applications, Jones sought to

---

[4] First-degree burglary is exempt from the classification system.  S.C. Code Ann. § 16-1-10(D) (2015 & Supp. 2021).

[5] In both the 2010 and 2021 version, the subsection allows for remand to the family court at the discretion of the solicitor.

[6] *See* S.C. Code Ann. § 16-11-311(B) (2015) ("Burglary in the first degree is a felony punishable by life imprisonment.  For purposes of this section, 'life' means until death.  The court, in its discretion, may sentence the defendant to *a term of not less than fifteen years*." (emphasis added)).

[7] *See* S.C. Code Ann. § 16-11-330(A) (2015) ("A person who commits robbery while armed . . . is guilty of a felony and, upon conviction, *must be imprisoned for a mandatory minimum term of not less than ten years* or more than thirty years, no part of which may be suspended or probation granted."  (emphasis added)).

vacate his pleas. By order dated June 22, 2017, a circuit court judge granted Jones's motion to merge the applications into one action for PCR.

Jones raised two arguments in his PCR application. First, Jones alleged his plea counsel was constitutionally ineffective according to *Strickland v. Washington*, 46 U.S. 668 (1984) because counsel did not properly investigate the mitigating circumstances of Jones's youth and failed to engage in meaningful plea negotiations. Second, Jones contended subsection 63-19-20(1),[8] which transferred him from family court to circuit court as an adult, was unconstitutional. Specifically, Jones asserted the statutory provision is unconstitutional because it does not allow discretion in sentencing for a defendant who was a juvenile at the time of the crime, which deprived him of due process. Further, Jones claimed his sentence is also cruel and unusual in violation of the Eighth Amendment to the United States Constitution and article I, sections 3 and 15, of the South Carolina Constitution.

The PCR court conducted the hearing on November 18, 2019 and subsequently dismissed Jones's application in an order dated January 29, 2020. The court relied on two principal reasons in dismissing the application.

First, the court ruled that Jones did not meet his burden under *Strickland* in alleging constitutional ineffectiveness for failing to investigate mitigating circumstances of youth because Jones was sentenced to the mandatory minimum for both crimes. In support of this, the PCR court found that plea counsel noted Jones's youth and the plea court considered Jones's age. Jones did not appeal the *Strickland* ruling to this Court.

Second, the PCR court ruled counsel was not deficient in failing to challenge the constitutionality of subsection 63-19-20(1) because "[a]t the time of [Jones's] plea, and to date, South Carolina's automatic waiver provision and [Jones's] mandatory minimum sentence are considered constitutional." The court found, even if the court interpreted Jones's claim as a *Strickland* challenge, "[i]t is a long-standing rule that an attorney is not required to be clairvoyant and anticipate or discover changes in the law which were not in existence at the time of trial." Further, the court noted that "[a]ny allegation that the waiver provision was unconstitutional or

---

[8] The parties and the lower courts refer to the provision as the "automatic waiver provision." This, however, is a misnomer. As we will explain, we construe subsection 63-19-20(1) as a definitional statute. We refer to it here exclusively as "subsection 63-19-20(1)."

that [Jones's] sentence was unconstitutional could and should have been raised either in a direct appeal or through the Federal Habeas procedures."

Jones appealed the dismissal of his PCR application for the sole purpose of challenging the constitutionality of subsection 63-19-20(1). *See* Rule 243(a), SCACR; Rule 243(l), SCACR. This Court granted the petition because it involves a challenge to the constitutionality of a statute. *See* Rule 203(d)(1)(A)(ii), SCACR.

## II.  STANDARD OF REVIEW

In an appeal from a PCR court, "[q]uestions of law are reviewed *de novo*, and we will reverse the PCR court's decision when it is controlled by an error of law." *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016).

"This Court has a limited scope of review in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid." *Curtis v. State*, 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001). "Further, a legislative act will not be declared unconstitutional unless its repugnance to the Constitution is clear and beyond a reasonable doubt." *Id.* at 570, 549 S.E.2d at 597.

## III.  DISCUSSION

Jones argues subsection 63-19-20(1) is unconstitutional. In support, Jones contends the provision restricts a judge's ability to consider the mitigating factors of youth as articulated in *Miller v. Alabama*, 567 U.S. 460 (2012) because a family court is in a better position to adjudicate juveniles. In Jones's view, the provision prevents judges from exploring the full impact of a defendant's youth on the record before a juvenile is "automatically waived" to the circuit court. Jones maintains that "adult court" delivers more severe sentences to defendants.

Conversely, the State argues that the provision is constitutional and, therefore, the PCR court did not commit an error of law dismissing Jones's PCR application. The State contends that Jones has no constitutional right to have his case adjudicated in family court. Additionally, the State asserts that any right a person may have to be in the family court's jurisdiction is statutorily created.

Because Jones appeals the PCR court's order of dismissal, we must consider whether Jones brings a cognizable PCR claim in his application and whether subsection 63-19-20(1) is constitutional.

### A. Cognizable PCR Claim

The PCR court characterized Jones's constitutional claim as a trial court error, not cognizable for PCR. We conclude the PCR court erred in this holding.

A person who has been convicted of a crime can initiate a PCR proceeding when he alleges his conviction or sentence violated either the United States Constitution or South Carolina Constitution. S.C. Code Ann. § 17-27-20(A)(1) (2014) ("Persons who may institute proceeding; exclusiveness of remedy. (A) Any person who has been convicted of, or sentenced for, a crime and who claims: (1) That the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this State.").

In *Simmons v. State*, this Court indirectly distinguished constitutional PCR claims and claims that the parties could have addressed before trial, during trial, or on direct appeal. 264 S.C. 417, 423, 215 S.E.2d 883, 885 (1975) ("Errors in a petitioner's trial which could have been reviewed on appeal may not be asserted for the first time, or reasserted, in post-conviction proceedings." (citations omitted)).

However, "[a] violation found to be unconstitutional after the time for appeal lapses is not a direct appeal issue and is not barred from PCR consideration." *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998). "In a PCR proceeding, a defendant collaterally attacks his conviction and may raise any claims of constitutional violations relating to his conviction." *Williams v. Ozmint*, 380 S.C. 473, 477, 671 S.E.2d 600, 601 (2008).

Turning to the instant case, we find Jones properly challenged the constitutionality of subsection 63-19-20(1) and his resulting sentences in his PCR application. Initially, we note that Jones was precluded from raising this issue during the plea proceeding because conditional guilty pleas are not permitted. *See State v. Truesdale*, 278 S.C. 368, 370, 296 S.E.2d 528, 529 (1982) ("[A]ppellant here entered a conditional plea which is a practice not recognized in South Carolina and a practice which we expressly disapprove. . . . [A] guilty plea constitutes waiver of all prior claims of constitutional rights or deprivations thereof."). Further, pursuant to subsection 17-27-20(A)(1), the PCR court had jurisdiction over this claim, which is distinct from an ineffective assistance of counsel claim under *Strickland*.

Having found Jones presented a cognizable PCR claim, we now address the merits of his constitutional challenge.

**B.  Constitutionality of subsection 63-19-20(1)**[9]

For reasons that will be discussed, we hold that subsection 63-19-20(1) is constitutional.  However, we are mindful that juveniles are entitled to careful sentencing under the Eighth Amendment, and we direct circuit court judges to consider the mitigating factors of youth articulated in *Aiken v. Byars*, 410 S.C. 534, 544, 765 S.E.2d 572, 577 (2014).  While consideration of the factors enumerated in *Aiken* provides sufficient attention to actual juvenility, circuit court judges are not required to do so in a separate *Aiken* hearing when sentencing pursuant to this subsection.  *See In re Administrative Order*, 415 S.C. 460, 783 S.E.2d 534 (2016) (establishing procedures for the management and disposition of motions for resentencing filed pursuant to *Aiken*).

We begin by examining the jurisdiction of the family court and the operational effect of subsection 63-19-20(1).  The family court has exclusive jurisdiction over a child "who is alleged to have violated or attempted to violate any state or local law."  S.C. Code Ann. § 63-3-510(A)(1)(d) (2010).  In general, a "child" or "juvenile" is defined as "a person less than seventeen years of age," according to the provision at the time of Jones's sentencing.  S.C. Code Ann. § 63-19-20(1) (2010).  However, the General Assembly expressly excluded from this definition "a person *sixteen* years of age or older who is charged with a Class A, B, C, or D felony as defined in Section 16-1-20 or a felony which provides for a maximum term of imprisonment of fifteen years or more."  *Id*. (emphasis added).  Because Jones did not meet the definition of a "child" or "juvenile," he was subject to the jurisdiction of the circuit court rather than the family court.

Further, in our view, subsection 63-19-20(1) operates as a definitional statute, in both its 2010 form and its 2021 form.  The General Assembly created the family court as a statutory court and determines its jurisdiction through legislation.  Because the subsection exempts Jones from falling within the family court's jurisdiction, in operation with subsection 63-3-510(A)(1)(d), it cannot "transfer" or "waive" him to the circuit court.  Therefore, we decline to characterize subsection 63-29-20(1) as an "automatic waiver provision" and view the subsection as definitional in effect.

---

[9] Before the PCR court, Jones argued the provision violated his rights under both the United States and South Carolina Constitutions.  However, before this Court, Jones does not argue subsection 63-19-20(1) violates his rights under the South Carolina Constitution.  Accordingly, we limit our analysis to Jones's challenge under the United States Constitution.

Turning to the basis of Jones's challenge, the Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.[10] "[T]he Eighth Amendment guarantees individuals the right not to be subjected to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005).

The United States Supreme Court sequentially has interpreted the protections of the Eighth Amendment to hold that juveniles are entitled to different treatment in sentencing when the death penalty or a life-without-parole sentence is imposed. *See Thompson v. Oklahoma*, 487 U.S. 815 (1988) (holding the execution of an offender under the age of sixteen at the time of the crime violates the United States Constitution); *Roper*, 543 U.S. at 551 (ruling the imposition of the death penalty for offenders under the age of eighteen at the time of the crime violates the Eighth and Fourteenth Amendments); *Graham v. Florida*, 560 U.S. 48 (2010) (holding the Eighth and Fourteenth Amendments prohibit the imposition of a life-without-parole sentence on a juvenile offender who did not commit homicide); *Miller v. Alabama*, 567 U.S. 460 (2012) (ruling that *mandatory* life-without-parole sentences for individuals under the age of eighteen violates the Eighth Amendment and stating the judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty).[11]

Most recently, the United States Supreme Court again limited its interpretation of the amendment in the *Roper-Graham-Miller* line of cases. *See Jones v. Mississippi*, 141 S. Ct. 1307 (2021) (holding, under *Miller*, a sentencing court need not make a finding of permanent incorrigibility before imposing a life-without-parole sentence).

We have followed United States Supreme Court precedent in interpreting the Eighth Amendment as applied to South Carolina law. *See Aiken v. Byars*, 410 S.C. 534, 765 S.E.2d 572 (2014) (holding inmates sentenced to life without parole as juveniles before *Miller* were entitled to resentencing because their sentences violated the Eighth Amendment);[12] *State v. Slocumb*, 426 S.C. 297, 827 S.E.2d 148 (2019)

---

[10] "The provision is applicable to the States through the Fourteenth Amendment." *Roper v. Simmons*, 543 U.S. 551, 560 (2005).

[11] The United States Supreme Court held the *Miller* rule applies to the states retroactively on collateral review. *Montgomery v. Louisiana*, 577 U.S. 190 (2016).

[12] This Court's decision in *Aiken* came before the United States Supreme Court's decision in *Montgomery*.

(declining to extend *Graham*'s holding to de facto life-without-parole sentences); *State v. Smith*, 428 S.C. 417, 836 S.E.2d 348 (2019) (holding mandatory minimum sentence on those convicted of murder, whether a juvenile or adult, does not violate the Eighth Amendment as interpreted by *Miller*).

In *Aiken*, we held life-without-parole sentences for juvenile offenders only satisfied the constitutional requirements articulated in *Miller* when the sentencing court conducted an individualized hearing on mitigating factors of youth. 410 S.C. at 545, 765 S.E.2d at 578. We later limited *Aiken*'s holding by declining to extend the reasoning to de facto life sentences: "[W]e believe the proper course is to respect the Supreme Court's admonition that lower courts must refrain from extending federal constitutional protections beyond the line drawn by the Supreme Court." *Slocumb*, 426 S.C. at 314–15, 827 S.E.2d at 157. Again, in *Smith*, we declined to extend *Aiken* and held a mandatory minimum sentence was constitutional as applied to juveniles. 428 S.C. at 418, 836 S.E.2d at 348. Further, we noted that "[w]e are again being asked to ignore the confines of the holdings of the Supreme Court and instead extend the rationale underlying the holdings." *Id*. at 420, 836 S.E.2d at 349–50.

In this case, we find *Smith* is dispositive. Appellant Smith was convicted of murder and attempted murder, which he committed just before his eighteenth birthday. *Id*. at 418, 836 S.E.2d at 348. South Carolina law provided for a mandatory minimum sentence of thirty years for murder, whether an adult or a juvenile. *Id*. (citing S.C. Code Ann. § 16-3-20(A) (2015)). The circuit court gave Smith an individualized sentencing hearing pursuant to *Aiken*. *Id*. at 419, 836 S.E.2d at 349. Following the narrow trend of precedent, we declined to extend the reasoning behind the interpretation of the Eighth Amendment and held the mandatory minimum sentence was constitutional as applied to juveniles. *Id*. at 420–21, 836 S.E.2d at 349–50. Because mandatory minimums do not violate juveniles' rights under the Eighth Amendment, juveniles can be subject to those mandatory minimums under the operation of subsection 63-19-20(1).

Considering the confines of these precedents, we again decline to extend the *Roper-Graham-Miller* line,[13] and Jones cannot rely on their reasonings to support

_____

[13] *See State v. B.T.D.*, 296 So. 3d 343, 354–55 (Ala. Crim. App. 2019) ("Accordingly, in Alabama, juveniles who have attained the age of [sixteen] years and who are charged with an offense enumerated in [the similar provision] have neither a constitutionally nor statutorily protected liberty interest in juvenile-court adjudication that would entitle them to procedural due process before they can be

his contention that subsection 63-19-20(1) violates the Eighth Amendment.[14] Therefore, we hold that subsection 63-19-20(1) does not violate the Constitution.

Despite our conclusion that subsection 63-19-20(1) is consistent with the Eighth Amendment, the United States Supreme Court's precedent, and our precedent, we direct circuit courts to consider the mitigating factors of youth in sentencing juveniles falling under the ambit of subsection 63-19-20(1).

In *Aiken*, we enumerated five factors that a court must consider when life without parole is a possible sentence for a juvenile:

> (1) the chronological age of the offender and the hallmark features of youth, including "immaturity, impetuosity, and failure to appreciate the risks and consequence"; (2) the "family and home environment" that surrounded the offender; (3) the circumstances of the homicide offense, including the extent of the offender's participation in the conduct and how familial and peer pressures may have affected him; (4) the "incompetencies associated with youth—for example, [the offender's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the offender's] incapacity to assist his own attorneys"; and (5) the "possibility of rehabilitation."

---

subjected to the jurisdiction of the 'adult court.'"); *see also United States v. Bland*, 472 F.2d 1329, 1337 (D.C. Cir. 1972) ("[J]udicial consideration of the legitimate scope of prosecutorial discretion clearly encompasses the exercise of such discretion where it has the effect of determining whether a person will be charged as a juvenile or as an adult. . . . [T]he exercise of discretion by the United States Attorney in the case at bar involves no violation of due process or equal protection of the law."), *cert. denied*, 412 U.S. 909 (1973).

[14] We note that some state courts have identified different challenges—either a claim based on a liberty interest in being "tried as a juvenile" or a right to be "sentenced as a juvenile." *Compare State v. Orozco*, 483 P.3d 331, 339 (Idaho 2021) ("[W]e decline to create a protected liberty interest where the legislature itself has expressly preempted one."), *with State v. Crooks*, 911 N.W.2d 153, 170 (Iowa 2018) ("We conclude the Iowa youthful offender statutes provide the discretionary, posttrial sentencing that *Miller* requires."). In theory, the former arises from the Due Process Clause of the Fourteenth Amendment, and the latter from the Eighth Amendment. However, it appears that the parties here base their claims on the latter.

410 S.C. at 544, 765 S.E.2d at 577 (quoting *Miller*, 567 U.S. at 477–78).  Courts have applied these "mitigating factors of youth" to consider the fundamental differences between juvenile and adult offenders.  *See supra* Section III(B).

Turning to the specific issue presented, the important distinction between family court and circuit court pertains to sentencing discretion.  The family court has broad discretion as to adjudication, which is expressly not a conviction.  S.C. Code Ann. § 63-19-1410 (2010 & Supp. 2021).  In contrast, a circuit court's discretion in sentencing is limited to statutorily created parameters.  In the instant case, armed robbery carries a mandatory minimum sentence of ten years, and first-degree burglary carries a mandatory minimum of fifteen years.  *Id*. § 16-11-330(A) (2015); *id*. § 16-11-311(B).

Jones contends that his transfer to circuit court restricts the court's ability to consider the *Miller* factors before a juvenile is automatically waived to adult court where the sentences are much more severe.  We disagree.  Although the General Assembly has bound the circuit court's sentencing discretion by creating statutory minimums, the circuit court had a range of years in which to appropriately sentence Jones.  Jones does not adequately explain why a family court must consider these factors over the general sessions court.

Here, the plea court sufficiently considered the applicable mitigating factors of youth before imposing Jones's sentences.  At the hearing, the circuit court inquired into Jones's background and characteristics of youth as to the first factor.  Jones achieved his GED.  He worked in landscaping, was not married, and did not have any children.  Jones, at the time, was not under the influence of any drugs or alcohol, and he did not have any mental, physical, emotional, or nervous disabilities.[15]  The court also inquired into Jones's understanding of his relationship with his attorney.

As to the second factor, the court heard from Jones's mother, father, and grandmother before imposing the sentence.

As to the fourth factor, the court made certain that Jones understood the severity of his charges and the minimum and maximum penalties.  The court also heard a detailed recitation of the facts underlying the charges and admonished Jones to "listen carefully to the facts."  Further, the court cautioned Jones about the risks

---

[15] Two years before the hearing, when he was sixteen, Jones was treated for his marijuana use.

in waiving a jury trial. In our calculation, the court asked Jones if he certainly pleaded guilty no less than eight times.

Therefore, the plea court properly considered the mitigating factors of youth and thoroughly explored Jones's juvenility on the record. We discern no difference between a circuit court's and a family court's ability to investigate Jones's background on the record.[16] Additionally, after thorough questioning, the plea court sentenced Jones to the statutory minimum for each charge. Consequently, accepting Jones's plea and sentencing him accordingly did not result in a constitutional infirmity based on the United States Supreme Court's and this Court's interpretations of the Eighth Amendment.

## IV. CONCLUSION

Because Jones properly brought a cognizable PCR claim in challenging his sentences and subsection 63-19-20(1), we conclude the PCR court erred in dismissing his application on this ground. As to the merits of Jones's constitutional claim, we hold that subsection 63-19-20(1) does not violate the Eighth Amendment beyond a reasonable doubt. However, we direct circuit courts to consider the *Aiken* factors of youth when sentencing juveniles subject to this subsection.[17] In the instant case, given that the circuit court judge sufficiently considered these factors, we affirm Jones's sentences.

**AFFIRMED IN PART AND REVERSED IN PART.**

**KITTREDGE and JAMES, J.J., concur. Acting Justice Kaye G. Hearn concurring in a separate opinion in which FEW, J., concurs.**

---

[16] We note these factors are fact-specific and may weigh differently on a case-by-case basis in the discretion of the circuit court.

[17] We reiterate our holding does not require a separate *Aiken* hearing established by *In re Administrative Order*, 415 S.C. 460, 783 S.E.2d 534 (2016).

**Acting Justice Kaye G. Hearn:** I concur with the majority's opinion except for its conclusion that the hearing before the circuit court fully complied with *Aiken v. Byars*, 410 S.C. 534, 765 S.E.2d 572 (2014). While the circuit court judge obviously could not have been aware that our decision in *Aiken* would apply to these facts, the hearing that occurred in no way satisfies what *Aiken* requires.

In *Aiken*, we noted,

> While we do not go so far as some commentators who suggest that the sentencing of a juvenile offender subject to a life without parole sentence should mirror the penalty phase of a capital case, we are mindful that the *Miller* Court specifically linked the individualized sentencing requirements of capital sentencing to juvenile life without parole sentences.

*Id.* at 544, 765 S.E.2d at 577. Thus, it is apparent that an *Aiken* hearing is more than what transpires during typical sentencing. Indeed, we recently heard a challenge following a resentencing hearing where the primary issue concerned whether the trial court had imposed a burden on the defendant to prove why the original sentence violated *Aiken*. In determining that no such burden of proof or persuasion exists, we upheld the sentence imposed after recounting the thorough inquiry that occurred. *State v. Smart*, Op. No. 28161 (S.C. Sup. Ct. filed June 21, 2023) (Howard Adv. Sh. No. 24 at 17). The trial court in *Smart* conducted a textbook example of what a proper *Aiken* hearing affords—listening to testimony from an expert psychologist who examined Smart several times and reviewed "thousands of pages of his records," and receiving testimony from a number of witnesses regarding the circumstances of the crime and the defendant's background. The trial court weighed the evidenced, considered counsel's arguments, and analyzed the *Aiken* factors before imposing a sentence.

Conversely, the hearing in this matter involved a guilty plea that included the same boilerplate questions asked during any plea, regardless of the defendant's age. For example, the court asked about the defendant's age, his criminal record, his employment history, any drugs or medication he may have been on, his satisfaction with his lawyer, and whether he understood the consequences of pleading guilty. I believe *Aiken* requires more because these general questions simply do not equate to the more in-depth and detailed questions that should be asked and answered in order to analyze the "hallmark features of youth" that *Aiken* mandates. In my view, it would be nearly impossible for any hearing where the judge does all the questioning

to comply with *Aiken*. Nonetheless, I concur in the balance of the majority's opinion because the circuit court sentenced the defendant to the statutory minimum sentence for both charges and ran them concurrently; thus, a more thorough hearing in this case could not have led to a lesser sentence.

**FEW, J., concurs.**